UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STANFORD PAUL BRYANT, | ) | Civil No. 08cv02318 W(RBB) |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING DISCOVERY** |
| | ) | **MOTIONS [ECF NOS. 53, 56, 66,** |
| v. | ) | **71, 74, 82, 86]** |
| | ) | |
| T. ARMSTRONG, Correctional | ) | |
| Officer; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

On December 12, 2008, Plaintiff Stanford Paul Bryant, a state prisoner proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 [ECF No. 1]. Bryant filed a First Amended Complaint on March 3, 2009 [ECF No. 3], and a Second Amended Complaint on June 23, 2010 [ECF No. 39].

Following several motions to dismiss, Defendants Armstrong, Catlett, Janda, Lizarraga, Ochoa, and Trujillo filed an Answer to the Second Amended Complaint on April 29, 2011 [ECF No. 49]. The Court subsequently held a case management conference and the parties commenced discovery [ECF Nos. 51-52]. Cross-motions for summary judgment are currently pending [ECF Nos. 91-92]. All

1

pretrial dates have been vacated, pending a ruling on the summary judgment motions [ECF No. 104].

Also pending before the Court are Plaintiff's seven motions to compel discovery from four of the six remaining Defendants [ECF Nos. 53, 56, 66, 71, 74, 82, 86].[1]  The Court finds the motions to compel suitable for resolution on the papers, pursuant to Civil Local Rule 7.1.  <u>See</u> S.D. Cal. Civ. R. 7.1(d)(1).  For the reasons stated below, Bryant's motions are **GRANTED** in part and **DENIED** in part.

# I.

## FACTUAL BACKGROUND

The Plaintiff contends in count one that Defendant Armstrong violated the Equal Protection Clause by discriminating against Bryant because of his race.  (Second Am. Compl. 13, 16-17, ECF No. 39.)[2]  The Defendant allegedly scheduled Plaintiff and other African-American inmates to attend the law library during times that conflicted with their yard recreation; in contrast, Armstrong scheduled Hispanic inmates for law library time that did not interfere with yard time.  (<u>Id.</u> at 13-17.)

In count two, Bryant argues that Defendant Armstrong retaliated against him for submitting an inmate grievance against Armstrong for racial discrimination.  (<u>Id.</u> at 19-20.)  According to Bryant, Armstrong retaliated by filing a false "Information Chrono."  (<u>Id.</u> at 22.)

---

[1]  The Court will cite to each discovery motion using the page numbers assigned by the electronic case filing system.

[2]  Because Bryant's Second Amended Complaint is not consecutively paginated, the Court will also cite to it using the page numbers assigned by the electronic case filing system.

The Plaintiff argues in count three that after he and another inmate submitted grievances against Armstrong, Defendant Lizarraga retaliated against Bryant and other African-American prisoners by moving them to more restrictive cell placements, threatening Plaintiff, and filing a false disciplinary report and rule violation charge against Bryant.  (Id. at 25-30.)  Further, Defendant Trujillo purportedly falsified a report and refused to permit the Plaintiff to call witnesses at his disciplinary hearing.  (Id. at 34.)  Defendants Catlett, Janda, and Ochoa sanctioned the retaliatory conduct of Armstrong, Lizarraga, and Trujillo.  (Id. at 41.)

Finally, in count four, Plaintiff alleges that Defendants Armstrong, Lizarraga, and Trujillo violated California Civil Code sections 52.1, 51.7, and 52(b) by interfering with Bryant's constitutional rights because of his race.  (Id. at 43.)  Armstrong and Lizarraga threatened violence against Plaintiff if he continued to discuss or pursue grievances alleging racial discrimination.  (Id. at 43-44.)  Lizarraga is claimed to have "committed an act of violence" against Plaintiff by removing legal documents from his cell without permission.  (Id. at 44.)  Similarly, Bryant contends that Defendant Trujillo intimidated Plaintiff by having three Hispanic officers surround him in a "menacing manner."  (Id. at 44-45.)

## II.

### LEGAL STANDARDS

It is well established that a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense.  Fed. R. Civ. P. 26(b)(1).  Relevant information need not

be admissible at trial so long as the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Id. Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that may be in the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)) (footnote omitted). Rule 37 of the Federal Rules of Civil Procedure authorizes the propounding party to bring a motion to compel responses to discovery. Fed. R. Civ. P. 37(a)(3)(B). The party opposing the discovery bears the burden of resisting disclosure. Miller v. Pancucci, 141 F.R.D. 292, 299 (C.D. Cal. 1992).

**III.**

**DISCUSSION**

**A.    Defendant Ochoa:   Motion to Compel Responses to Document Requests 1, 2, 3, and 4 (Set One) [ECF No. 53]**

Plaintiff filed a "Motion for an Order to Compel Discovery," in which he seeks an order compelling Defendant Ochoa to respond to requests for production of documents 1, 2, 3, and 4 in set one [ECF No. 53]. Defendant T. Ochoa's Opposition to Plaintiff's Motion for an Order to Compel Discovery was later filed, along with a declaration of John P. Walters [ECF No. 57]. "Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for an Order to Compel Discovery" was also filed [ECF No. 60].

In request for production of documents 1, Bryant seeks "[a]ny and all documents and writings, as 'writings' is defined by Federal Rules of Evidence 1001 that discloses [sic] the contents of any and all questions, answers or statements resulting from any and all

4

inquiries made in Appeal log #CAL-A-08-00207 . . . ." (Mot. Order Compel Disc. Ochoa 4, ECF No. 53.) Request 2 is identical to request 1, except it relates to appeal log #CAL-A-08-00311. (Id. at 11-12.) Requests 3 and 4 are also identical, but they concern appeal logs #CAL-A-08-02223 and #CAL-A-08-01027, respectively. (Id. at 12.) Defendant Ochoa objects that all four document requests are vague and ambiguous. (Id. at 16-17.) Defendant also states that a diligent search was undertaken and that all responsive documents within Ochoa's control have been provided. (Id.)

In his Motion to Compel, Bryant maintains that Ochoa improperly failed to produce any records even though they are part of Calipatria's investigative files and therefore in Ochoa's possession. (Id. at 4.) Defendant's responses are incomplete because Plaintiff has received documents that "indicate that there [were] several 'inquiries' conducted as a result of [Bryant's] grievances Log Nos. Cal-A-08-00207, #Cal-A-08-00311, and #Cal-A-08-01027." (Id. at 9.) Plaintiff argues that Ochoa signed related "Confidential Supplement to Appeals" documents on April 5, 2008, and July 27, 2008. (Id.) Any attempt by Ochoa to claim that the documents do not exist, Bryant contends, is therefore evasive. (Id. at 6.)

**1. Timeliness of Defendant's responses and objections**

Plaintiff submits in his declaration that he served Ochoa with a set of document requests on June 15, 2010. (Id. at 8.) This Court subsequently stayed all discovery pending resolution of the then-pending motion to dismiss. (Id.) Yet, according to Bryant, Ochoa did not respond to the discovery until nearly two months

later on June 1, 2011.  (Id. at 5.)  Therefore, Plaintiff urges that Ochoa has waived his objections by failing to timely respond to the discovery requests.  (Id.)

In his Opposition, Defendant argues that Bryant misinterprets the Court's order staying discovery and he does not specify what dates or deadlines he uses to assert the responses were almost two months late.  (Def. T. Ochoa's Opp'n 2, ECF No. 57.)  According to the Defendant, Plaintiff served the document requests on June 15, 2010, and on July 14, 2010, the Court issued a minute order staying all discovery pending a ruling on the motion to dismiss.  (Id.)  Then, on January 7, 2011, in its Report and Recommendation, "the Court stayed all discovery 'pending the motion to dismiss.'"  (Id.)  Ochoa represents, "No further details were given."  (Id.)  Defendant asserts that on February 11, 2011, the district court issued an order on the motion to dismiss, and Defendants filed an Answer on April 29, 2011.  (Id.)

Ochoa submits, "Thus, the orders stayed discovery pending the motion to dismiss, but did not specify any exact date or method for resuming discovery."  (Id.)  On May 2, 2011, defense counsel mailed a letter to Bryant concerning the discovery and suggested that, because the stay was lifted, Plaintiff's first set of document requests be deemed served that day and a response would be due May 31, 2011.  (Id.)  Counsel asked Plaintiff to advise him of any objections to the proposal.  (Id.)  Defendant served his responses to the discovery requests on May 24, 2011.  (Id.)  Accordingly, Ochoa maintains that his responses were timely served, and no objections were waived.  (Id. at 3.)

1    In his Reply, Bryant urges that Ochoa misstates the record.

2  (Pl.'s Reply Defs.' Opp'n 2, ECF No. 60.)  Plaintiff points out

3  that this Court specifically stayed discovery until thirty days

4  after the district court issued an order on Defendants' motion to

5  dismiss.  (Id.)  Bryant asserts, "The Defendant Ochoa does not

6  claim that he did not have knowledge of this Court's order or the

7  specific date that the district court judge issued the order on

8  Defendant's Motion to Dismiss, in fact Defendant Ochoa cites the

9  specific date which the district court judge issued the order

10 . . . ."  (Id.)

11    On July 2, 2010, Defendants filed a Motion for a Protective

12 Order to Stay Discovery Pending the Motion to Dismiss [ECF No. 41].

13 On July 15, 2010, this Court issued a temporary stay of discovery,

14 pending resolution of the Motion to Dismiss and the Motion for a

15 Protective Order [ECF No. 42].  In their Motion for a Protective

16 Order, the Defendants alleged that on June 15, 2010, after

17 Plaintiff filed his Second Amended Complaint but before Defendants

18 moved to dismiss, Plaintiff served five sets of discovery on

19 Defendants.  (Mot. Protective Order Attach. #1 Mem. P. & A. 2, ECF

20 No. 41.)  The Defendants maintained that all discovery should be

21 stayed until their motion to dismiss was resolved.  (Id. at 3.)

22    This Court, on January 7, 2011, recommended that the motion to

23 dismiss be granted in part and denied in part and ordered that all

24 discovery be stayed [ECF No. 46].  As to the Defendants' request

25 for a protective order, the Court explicitly stated:

26         Applying these guidelines, a temporary stay on
        discovery until resolution of the Motion to Dismiss is
27      appropriate.  Defendants filed this Motion after they
        were served with discovery and met with Plaintiff in an
28      attempt to resolve the issue.  Defendants do not seek a

                                  7
                                                      08cv02318 W(RBB)

> protective order that will remain in effect after their
> Motion to Dismiss is resolved, or until any
> answer is filed; they merely request that discovery be
> stayed until the Motion to Dismiss is ruled upon.

(Order Granting Defs.' Mot. Protective Order 42, ECF No. 46
(internal citations omitted).)

The Court addressed the duration and extent of the stay as follows:

> Defendants have shown good cause to stay discovery
> pending a ruling on their Motion to Dismiss.  A stay of
> all discovery shall be in effect from the date this
> Report and Recommendation is filed until thirty days
> after the district court judge issues an order on
> Defendants' Motion to Dismiss Plaintiff's Second Amended
> Complaint [ECF No. 40].

(Id. (internal citations omitted).)

In his Opposition, Ochoa references this January 7, 2011 Order staying all discovery and represents that "the Court stayed all discovery 'pending the motion to dismiss[]'" yet misrepresents that "[n]o further details were given." (Def. T. Ochoa's Opp'n 2, ECF No. 57.)  Ochoa continues, "Thus, the orders stayed discovery pending the motion to dismiss, but did not specify any exact date or method for resuming discovery." (Id.)  This is a flagrant misrepresentation of the record.  Either Defendant and his attorney failed to read the order to which they repeatedly and explicitly rely, or they deliberately misled the Court.  Both possibilities are disconcerting.

In any event, Defendant Ochoa's responses are untimely. Because the district court issued its ruling on the motion to dismiss on February 11, 2011 [ECF No. 47], the stay of discovery was in effect for thirty days, or until March 14, 2011, as March 13, 2011, fell on a Sunday.  (See Order Granting Defs.' Mot.

Protective Order 42, ECF No. 46); see also Fed. R. Civ. P. 6(a)(1)(C); S.D. Cal. Civ. R. 7.1(c).  Ochoa ignored Plaintiff's discovery requests until May 2, 2011, when defense counsel mailed Bryant a letter referencing the stay and suggesting that the discovery be deemed served that day. (See Def. T. Ochoa's Opp'n Attach. #1 Decl. Walters 5, ECF No. 57.)  Plaintiff did not receive Defendant's objections and responses until June 1, 2011, which is seventy-nine days after the stay expired.  Ochoa's responses to document requests 1, 2, 3, and 4 in set one are untimely.

Unlike Rule 33, which governs interrogatories to parties, Rule 34 of the Rules of Civil Procedure does not provide that a responding party waives an objection not timely stated.  Compare Fed. R. Civ. P. 33(b)(4), with Fed. R. Civ. P. 34(b)(2)(C). Nevertheless, generally, when a party fails to provide any response or objection to interrogatories or document requests, courts deem all objections waived and grant a motion to compel.  See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) (finding that a party who failed to timely object to interrogatories and document production requests waived any objections); 7 James Wm. Moore, et al., Moore's Federal Practice, § 33.174[2], at 33-106, § 34.13[2][a], at 34-56 to 34-56.1 (3d ed. 2012).  "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of objection." Richmark, 959 F.2d at 1473.

Although the discovery stay was in effect through March 14, 2011, Ochoa did not serve his objections and responses until May 24, 2011, and Bryant did not receive them until June 1, 2011, roughly one and one-half months late.  Accordingly, Ochoa has

waived any objections and Plaintiff's document requests 1, 2, 3, and 4 in set one [ECF No. 53].

In response to a request for production of documents under Rule 34 of the Federal Rules of Civil Procedure, a party is to produce all relevant documents in his "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A party may be required to produce a document that is in the possession of a nonparty entity if the party has the legal right to obtain the document. Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995). The term "control" is broadly construed, and it includes documents that the responding party has the legal right to obtain from third parties. See id. (citations omitted); 7 James Wm. Moore, et al., Moore's Federal Practice, § 34.14[2][b], at 34-73 to 34-75 (footnotes omitted).

"[W]hen a response to a production of documents is not a production or an objection, but an answer, the party must answer under oath." 7 James Wm. Moore, et al., Moore's Federal Practice, § 34.13[2][a], at 34-57 (footnote omitted). Similarly, if a responding party contends that documents are not in its custody or control, the court may require more than a simple assertion to that effect. See id. § 34.14[2][a], at 34-73 (footnote omitted); see also Schwartz v. Marketing Publ'g Co., 153 F.R.D. 16, 21 (D. Conn. 1994) (citing cases establishing that the absence of possession, custody, or control of documents that have been requested must be sworn to by the responding party).

Here, Ochoa responded to document requests 1, 2, 3, and 4 by stating that he has produced all relevant records that are in his possession or control. It is not clear that the Defendant took

1   reasonable steps under the above standards to locate relevant

2   records.   Plaintiff's Motion to Compel further responses to these

3   requests [ECF No. 53] is **GRANTED**.   Ochoa must supplement his

4   responses and produce additional documents in his custody or

5   control that reflect inquiries and related investigations conducted

6   in response to Plaintiff's four grievances, as well as all

7   supplemental appeals documents, including any allegedly signed by

8   Ochoa.   If there are no other responsive documents in Defendant's

9   possession, custody, or control, after conducting this further

10  attempt to locate records, Ochoa must state so under oath and

11  describe efforts he made to locate responsive documents.   <u>See</u>

12  <u>Vazquez-Fernandez v. Cambridge Coll., Inc.</u>, 269 F.R.D. 150, 155 (D.

13  P.R. 2010).

14  **B.    <u>Defendant Armstrong:  Motion to Compel Responses to</u>**
        **<u>Interrogatories 1, 2, and 3 (Set One) and Document Requests 1,</u>**
15      **<u>2, and 3 (Set One) [ECF No. 56]</u>**

16          Next, Plaintiff filed a "Motion for an Order to Compel

17  Discovery" with a supporting brief and a declaration of Stanford P.

18  Bryant, in which he seeks an order compelling Defendant Armstrong

19  to respond to interrogatories 1, 2, and 3 in set one as well as

20  document requests 1, 2, and 3 in set one [ECF No. 56].   Defendant

21  T. Armstrong's Opposition to Plaintiff's Motion for an Order to

22  Compel Discovery was filed in response, along with a declaration of

23  John P. Walters [ECF No. 59].   "Plaintiff's Reply to Defendants'

24  Opposition to Plaintiff's Motion for an Order to Compel Discovery"

25  was also filed [ECF No. 70].

26          **1.   Interrogatory 1**

27          In interrogatory 1, Bryant asks Correctional Officer

28  Armstrong, "State any and all reasons why you no longer work for

1  CDCR at Calipatria State Prison." (Mot. Order Compel Disc.

2  Armstrong Attach. #2 Decl. Bryant 4, ECF No. 56.) Armstrong

3  objected that the information was not relevant, the interrogatory

4  lacks foundation, and it should be excluded under Federal Rule of

5  Evidence 403. (Id. at 13.) Defendant further objected that the

6  question invades her right to privacy under California Penal Code

7  §§ 832.7 and 832.8, and seeks information that is privileged and

8  confidential. (Id.)

9      In his Motion to Compel, Bryant asserts he believes that

10  Defendant no longer works at Calipatria because she was arrested

11  for committing criminal acts with, or on behalf of, the "Southern

12  California Hispanic Street gang(s)," and she was fired from CDCR as

13  a result. (Id. Attach. #1 Br. 3.) Plaintiff argues that Armstrong

14  has conceded in response to document request 1 that she is no

15  longer employed by CDCR. (Id.) Bryant maintains that this

16  interrogatory seeks relevant information that could lead to

17  evidence bearing on Defendant's intent to discriminate against

18  African-American inmates and favor Hispanic inmates. (Id. at 3-4.)

19      Although Armstrong raised multiple objections when initially

20  responding to the interrogatories, the Court will only address the

21  ones she elected to pursue when opposing this Motion. The

22  Defendant now argues that interrogatory 1 seeks information

23  regarding the personnel records of a correctional officer, which is

24  confidential. (Def. T. Armstrong's Opp'n 2, ECF No. 59.)

25  Armstrong submits, "In the context of disclosure of confidential

26  peace officer records, federal courts are bound by California law."

27  (Id. (citing Cal. Evid. Code § 1043).)

28

12                                    08cv02318 W(RBB)

1          **a.   Privileged and confidential**

2          As preliminary matter, the Court must determine whether state

3    or federal law applies to Defendant's assertion of privilege.

4    Armstrong represents that federal courts must apply state privilege

5    law as well as the procedures applicable to peace officers'

6    personnel records and Pitchess motions.[3]  (See Def. T. Armstrong's

7    Opp'n 2, ECF No. 59.)  This is an inaccurate statement of the law.

8          State privilege law does not govern discovery issues in

9    federal § 1983 cases.  See Kerr v. U.S. District Court for the N.

10   Dist. of Cal., 511 F.2d 192, 197 (9th Cir. 1975), aff'd, 426 U.S.

11   394 (1976); Crowe v. County of San Diego, 242 F. Supp. 2d 740,

12   749-50 (S.D. Cal. 2003); Kelly v. City of San Jose, 114 F.R.D. 653,

13   655-56 (N.D. Cal. 1987); see also Fed. R. Evid. 501; Miller, 141

14   F.R.D. at 299.  "In civil rights cases brought under federal

15   statutes, questions of privilege are resolved by federal law."

16   Hampton v. City of San Diego, 147 F.R.D. 227, 228, 230 (S.D. Cal.

17   1993) (citing Kerr, 511 F.2d at 197); Miller, 141 F.R.D. at 298-99

18   (comparing federal and California discovery rules at length,

19   finding direct conflicts between them, and holding that federal

20   discovery rules govern § 1983 civil rights actions).  "This theme

21   has been interpreted by the Ninth Circuit to include the discovery

22   of personnel files, despite claims of state-created privileges."

23   Miller, 141 F.R.D. at 297.  Here, Armstrong applies the wrong legal

24   standard altogether when arguing that each request seeks

25   privileged, confidential information.  (See Def. T. Armstrong's

26

27   ───────────────

28       [3]  See Cal. Evid. Code § 1043; Cal. Penal Code § 832.7 (West
     2008); Pitchess v. Superior Court, 11 Cal.3d 531, 552 P.2d 305, 113
     Cal. Rptr. 897 (1974) ("Pitchess").

                                    13

1   Opp'n 2, ECF No. 59).   Notwithstanding this shortcoming,

2   Defendant's objection fails under federal law.

3        Federal common law recognizes a qualified privilege for

4   official information, such as information in government personnel

5   files.   Kerr, 511 F.2d at 197-98.   Defendant Armstrong must comply

6   with the procedural requirements for asserting the official

7   information privilege.   See Rackliffe v. Rocha, No. 1:07-cv-00603-

8   AWI-DLB PC, 2012 U.S. Dist. LEXIS 57973, at *10 (E.D. Cal. Apr. 6,

9   2012) ("Defendants do not explain how the interrogatory . . . would

10  violate official information privilege."); Williams v. Walker, No.

11  CIV S-07-2385 WBS GGH P, 2009 U.S. Dist. LEXIS 122970, at *24-26

12  (E.D. Cal. Dec. 22, 2009) (explaining that to object to

13  interrogatories on the basis of the official information privilege,

14  an appropriately delegated prison official must personally consider

15  the material requested and explain why it is privileged); Gonzalez

16  v. City of Calexico, No. 03CV2005 WQH (PCL), 2006 U.S. Dist. LEXIS

17  93144, at *11-12 (S.D. Cal. Dec. 22, 2006) (stating requirements to

18  invoke the official information privilege for interrogatories).

19       To determine whether information in government personnel files

20  is subject to the official information privilege, federal courts

21  weigh the potential benefits of disclosure against the potential

22  disadvantages.   Sanchez v. City of Santa Ana, 936 F.2d 1027,

23  1033-34 (9th Cir. 1990).   In civil rights cases against corrections

24  officials, this balancing approach is moderately "pre-weight[ed] in

25  favor of disclosure."   Kelly, 114 F.R.D. at 661.

26       Before courts engage in this balancing, however, the party

27  asserting the privilege must make a "substantial threshold

28  showing."   Soto, 162 F.R.D. at 613.   Specifically, the party must

14

1    serve an objection to each discovery request that explicitly

2    "invokes the official information privilege by name." <u>Kelly</u>, 114

3    F.R.D. at 669.   The withholding party must also serve the

4    requesting party a privilege log or an equivalent that specifically

5    identifies the information that is purportedly protected from

6    disclosure.  <u>Hampton</u>, 147 F.R.D. at 230.   To support each

7    objection, the party alleging privilege must submit an affidavit

8    from a responsible official making several specific affirmations as

9    to the confidentiality of the information.   <u>Kelly</u>, 114 F.R.D. at

10   669-70.   If the nondisclosing party does not meet this initial

11   burden of establishing cause to apply the privilege, the court must

12   order disclosure of the documents; if the party meets this initial

13   burden, the court generally conducts an in camera review of the

14   material and balance each party's interests.   <u>Soto</u>, 162 F.R.D. at

15   613; <u>Kelly</u>, 114 F.R.D. at 671.

16        In <u>Kelly</u>, the court explained:

17        Unless the government, through competent declarations,
          shows the court what interests would be harmed, how
18        disclosure under a protective order would cause the harm,
          and how much harm there would be, the court cannot
19        conduct a meaningful balancing analysis.  And because the
          burden of justification must be placed on the party
20        invoking the privilege, a court that cannot conduct a
          meaningful balancing analysis because the government has
21        not provided the necessary information would have no
          choice but to order disclosure.

22

23   <u>Kelly</u>, 114 F.R.D. at 669; <u>see</u> <u>Chism v. County of San Bernadino</u>, 159

24   F.R.D. 531, 534-35 (C.D. Cal. 1994).

25        Here, assuming she is authorized to assert an official

26   information claim of privilege, Defendant Armstrong has not met her

27   burden of identifying the allegedly privileged information in her

28   personnel file and the specific interests that would be threatened

15                                    08cv02318 W(RBB)

by disclosure under a protective order.  She failed to invoke the privilege by name or explain how information concerning the reasons she no longer works for CDCR would violate the federal qualified privilege.  See Kelly, 114 F.R.D. at 672 (stating that generalized claims of harm are insufficient to satisfy the objecting party's burden); see Rackliffe, 2012 U.S. Dist. LEXIS 57973, at *10. Armstrong also has not satisfied the other requirements for invoking the privilege.

Because this Court is unable to conduct a meaningful balancing analysis, it overrules the privilege objection and orders full disclosure.  Kerr, at 669; see also Chism, 159 F.R.D. at 533 ("Deputy Rick Roper's (Roper's) declaration in opposition to the motion does not meet the threshold requirements of showing cause why discovery should be denied under the official information privilege.").  Bryant's Motion to Compel a response to interrogatory 1 is **GRANTED**.

**2.  Interrogatory 2**

Plaintiff asks Defendant in interrogatory 2, "State any and all reasons why you were arrested."  (Mot. Order Compel Disc. Armstrong Attach. #2 Decl. Bryant 4, ECF No. 56.)  Again, Armstrong objected on relevance, foundation, evidentiary, privacy, privilege, and confidential grounds.  (Id. at 13.)  In her Opposition, however, Defendant only pursues the objections based on relevance, privilege and confidentiality, and vagueness.

**a.  Relevance**

The Plaintiff maintains interrogatory 2 seeks relevant information because he believes Defendant was arrested for committing criminal acts in connection with the "Southern

08cv02318 W(RBB)

California Hispanic Street gang(s)" and was fired from CDCR as a result. (Mot. Order Compel Disc. Armstrong Attach. #1 Br. 3, ECF No. 56.) Bryant argues the question could lead to information demonstrating Armstrong's tendency to show preference toward the "Surenos/Hispanic" gang members from Southern California, who are "violently opposed" to African-Americans. (Pl.'s Reply Armstrong's Opp'n 4, ECF No. 70.) The information could also establish Defendant's intent to discriminate against Bryant and other African-Americans prisoners. (Id. at 4-5.) In response, Armstrong argues in a conclusory manner that the reasons she was arrested are irrelevant. (Def. T. Armstrong's Opp'n 3, ECF No. 59.)

Interrogatory 2 seeks information that is relevant to Bryant's accusation that Armstrong intentionally discriminated against him through law library scheduling or lead to the discovery of admissible evidence, even though the evidence may not ultimately be admissible at trial. See Fed. R. Civ. P. 26(b)(1). For example, if Armstrong's prior arrest involved her affiliation with a race-oriented gang, the information could bear on whether she intentionally discriminated against Bryant on the basis of race. See Oppenheimer Fund, Inc., 437 U.S. at 351; see also Hampton, 147 F.R.D. at 229 (discussing that personnel files and internal affairs histories may be relevant to issues of credibility or motive). Armstrong's relevance objection is overruled.

### b. Privileged and confidential

Defendant Armstrong objects to interrogatory 2 by stating, "Further, the interrogatory is also objectionable to the extent it seeks disclosure of any information that may be in Armstrong's personnel file." (Def. T. Armstrong's Opp'n 3, ECF No. 59.)

Armstrong is incorrect.  The interrogatory does not seek "any" information in her personnel file.  As discussed, although federal common law recognizes a qualified privilege for official information, Defendant has not properly invoked the privilege. Soto, 162 F.R.D. at 613; Kelly, 114 F.R.D. at 669.  This objection is also overruled.

### c.  Vagueness

Bryant asks Armstrong to state the "reasons" she was arrested. (Mot. Order Compel Disc. Armstrong Attach. #2 Decl. Bryant 4, ECF No. 56.)  The Defendant contends that the interrogatory is vague because it calls her to speculate as to the "reasons" she was arrested.  (Def. T. Armstrong's Opp'n 3, ECF No. 59.)

"The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity." Swackhammer v. Sprint Corp., 225 F.R.D. 658, 662 (D. Kan. 2004) (footnote omitted).  The responding party should exercise common sense and attribute ordinary definitions to terms in discovery requests.  Id. (footnote omitted).  A common sense definition of "reasons" would entail the legal bases for Defendant's arrest.  See id.  Bryant's interrogatory is not vague, and the Motion to Compel a further response to interrogatory 2 is **GRANTED**.

### 3.  Interrogatory 3

In interrogatory 3, Plaintiff asks Armstrong, "State where inmate Teklezi H. Gebrezgiaber is presently housed (I[n]stitution/Prison)."  (Mot. Order Compel Disc. Armstrong Attach. #2 Decl. Bryant 4, ECF No. 56.)  The Defendant objected to this interrogatory because it is not relevant, lacks foundation, and should be excluded under Federal Rule of Evidence 403.  (Id. at

1    13.)  She also stated that without waiving these objections, "I do

2    not know."  (<u>Id.</u>)

3         Armstrong submits in her Opposition that the dispute regarding

4    interrogatory 3 is moot because defense counsel has since informed

5    Bryant where inmate Gebrezgiabar is housed.  (Def. T. Armstrong's

6    Opp'n 3, ECF No. 59.)  Bryant does not indicate otherwise in his

7    Reply.  (<u>See</u> Pl.'s Reply Armstrong's Opp'n 4-6, ECF No. 70

8    (addressing interrogatories 1 and 2).)  In any event, Armstrong

9    answered the interrogatory.  Plaintiff's Motion to Compel a further

10   response to interrogatory 3 is **DENIED** as moot.

11        **4.   Request for production of documents 1**

12        In document request 1, Bryant seeks all documents and writings

13   that disclose the "contents of any and all procedures, policies, or

14   directives" revealing "the scheduling of inmates housed in

15   Calipatria State Prison's Administrative Segregation-Building 5 for

16   law library access" that were in effect during Armstrong's tenure

17   as "A5 Building Legal Officer."  (Mot. Order Compel Disc. Armstrong

18   Attach. #2 Decl. Bryant 8, ECF No. 56.)  Armstrong objected because

19   she lacks possession, custody, or control of the documents, as she

20   is "not employed by CDCR, and has no access to any of the requested

21   documents."  (<u>Id.</u> at 19.)

22             **a.   Possession, custody, or control**

23        Bryant challenges Defendant's claim that she lacks access to

24   the documents because she is not presently employed by CDCR.  (Mot.

25   Order Compel Disc. Armstrong Attach. #1 Br. 5, ECF No. 56.)  The

26   deputy attorney general representing Armstrong, John Walters, has

27   access to the records because he represents all of the other

28   Defendants who are presently employed by CDCR.  (<u>Id.</u>; <u>see</u> Pl.'s

1   Reply Armstrong's Opp'n 6-7, ECF No. 70 (citing <u>Pulliam v. Lozano</u>,

2   No. 1:07-cv-964-LJO-MJS(PC), 2011 U.S. Dist. LEXIS 12593, at *2

3   (E.D. Cal. Jan. 31, 2011)).)   According to Bryant, the Defendants

4   "have no problem obtaining documents from the CDCR for the purpose

5   of preparing their defense." (Pl.'s Reply Armstrong's Opp'n 7, ECF

6   No. 70.)   Bryant urges that Armstrong is in control of documents

7   showing scheduling policies because she is represented by the

8   Attorney General's Office.  (<u>Id.</u>)   The Defendant counters by

9   briefly stating that, as a former employee, she does not have

10  control over company documents.  (Def. T. Armstrong's Opp'n 4, ECF

11  No. 59 (citing <u>7-Up Bottling Co. v. Archer Daniels Midland Co.</u>, 191

12  F.3d 1090, 1107 (9th Cir. 1999)).)

13      A party is deemed to have control over documents if he or she

14  has a legal right to obtain them.  <u>See</u> <u>Clark</u>, 181 F.R.D. at 472;

15  <u>see also</u> 7 James Wm. Moore, et al., <u>Moore's Federal Practice</u>, §

16  34.14[2][b], at 34-73 to 34-75 (footnote omitted) ("The term

17  'control' is broadly construed.").   A party responding to a

18  document request "'cannot furnish only that information within his

19  immediate knowledge or possession; he is under an affirmative duty

20  to seek that information reasonably available to him from his

21  employees, agents, or others subject to his control.'"  <u>Meeks v.</u>

22  <u>Parsons</u>, No. 1:03-cv-6700-LJO-GSA, 2009 U.S. Dist. LEXIS 90283, at

23  *11-12 (E.D. Cal. Sept. 18, 2009) (citation omitted).

24      Some courts have assumed that a party has control of documents

25  in the possession of another and ordered the party to produce

26  relevant documents.   <u>See</u> <u>Zackery v. Stockton Police Dep't</u>, No. CIV

27  S-05-2315 MCE DAD P, 2007 U.S. Dist. LEXIS 44144, at *11-12 (E.D.

28  Cal. June 7, 2007) ("directing" counsel for defendants to obtain

and produce records in the possession of their current employer, the Stockton Police Department).  Yet, records in the possession of a former employer are further removed from the control of a former employee.  In <u>Lowe v. District of Columbia</u>, 250 F.R.D. 36, 38 (D.D.C. 2008), the district court stated that "[f]ormer employees of government agencies do not have 'possession, custody, or control' of documents held by their former employers."  The burden of establishing control over the documents sought is on the party seeking production.  <u>United States v. Int'l Union of Petroleum & Indus. Workers</u>, 870 F.2d 1450, 1452 (9th Cir. 1989); <u>accord</u> 7 James Wm. Moore et al., <u>Moore's Federal Practice</u>, § 34.14[2][b], at 34-77.

Bryant attempts to establish that Armstrong has control over Calipatria's law library scheduling policies by arguing that she and the other Defendants are represented by the Attorney General's Office, and the other Defendants are currently employed by CDCR. Plaintiff's argument would be stronger if the document request was directed at a Defendant who was currently employed by CDCR.  <u>See Pulliam</u>, 2011 U.S. Dist. LEXIS 12593, at *2.  Yet, Bryant seeks the records from Armstrong, a former CDCR employee.  The Plaintiff has not shown that Defendant has control over records in the custody of her former employer.  <u>Lopez v. Chertoff</u>, No. CV 07-1566-LEW, 2009 U.S. Dist. LEXIS 50419, at *5 (E.D. Cal. June 2, 2009) ("[A]s a former employee of the Yolo County Public Defender's Office [defendant] neither has possession, custody, or control of documents held by his former employer, nor does he have the present ability to legally demand such documents.")  Armstrong cannot be compelled to produce documents from an agency that previously

21

1  employed her when the records are not in her custody, possession,

2  or control.  Plaintiff's Motion to Compel a further response to

3  document request 1 is **DENIED**.

4      **5.  Request for production of documents 2**

5      In document production request 2, Bryant seeks all documents

6  and writings that disclose the "contents of any and all questions,

7  answers or statements resulting from any and all inquiries made"

8  concerning the grievance submitted by inmate Teklezgi H.

9  Gebrezgiaber "CDCR# T43976" on January 28, 2008.  (Mot. Order

10 Compel Disc. Armstrong Attach. #2 Decl. Bryant 8-9, ECF No. 56.)

11 The Defendant objected on relevance, foundation, and evidentiary

12 grounds, and because the requests invade inmate Gebrezgiaber's

13 right to privacy.  (<u>Id.</u> at 19-20.)  Armstrong further responded by

14 stating that she lacked possession, custody, or control over the

15 requested documents because she is not employed by CDCR and lacks

16 access to any of the material.  (<u>Id.</u>)

17          **a.  Possession, custody, or control**

18     Again, Plaintiff challenges Armstrong's contention that she is

19 unable to access inquiries into inmate Gebrezgiaber's grievance

20 because she is no longer employed at CDCR.  (<u>Id.</u> Attach. #1 Br. 5.)

21 As discussed above, however, the document request is directed at

22 Defendant Armstrong — a former CDCR employee.  She cannot be

23 compelled to produce responsive records from agencies that

24 previously employed and are not in her custody or possession.  <u>See</u>

25 <u>Lowe</u>, 250 F.R.D. at 38; <u>see also</u> <u>Lopez</u>, 2009 U.S. Dist. LEXIS

26 50419, at *5.  Defendant's objection is sustained, and the Motion

27 to Compel a response to document production request 2 is also

28 **DENIED**.

**6.   Request for production of documents 3**

Finally, in document request 3, Plaintiff asks for all documents and writings that reveal the "CDCR-Institution/Prison" in which inmate Teklezgi H. Gebrezgiaber (T43976) is currently housed. (Mot. Order Compel Disc. Armstrong Attach. #2 Decl. Bryant 9, ECF No. 56.)  Armstrong objected on relevance, foundation, evidentiary, and privacy grounds.  (<u>Id.</u> at 19-20.)  Defendant also asserted she lacks possession or control over the records.  (<u>Id.</u>)

In her Opposition, Armstrong maintains that this issue is moot because defense counsel has since provided Plaintiff with inmate Gebrezgiabar's current location.  (Def. T. Armstrong's Opp'n 5, ECF No. 59.)  In his Reply, Plaintiff does not contest Defendant's assertion that the dispute is moot.  (<u>See</u> Pl.'s Reply Armstrong's Opp'n 6-7, ECF No. 70 (addressing document requests 1 and 2).)  Therefore, Plaintiff's request for an order compelling a further response to document request 3 is **DENIED** as moot.

**C.   <u>Defendant Janda:  Motion to Compel Responses to Document Requests 12 and 13 (Set One) ("Amended") [ECF No. 66]</u>**

Next, Plaintiff filed a "Motion to Compel Discovery" seeking further responses from Defendant Janda to document requests 12 and 13 in set one ("amended") [ECF No. 66].  Defendant G. Janda's Opposition to Plaintiff's Motion to Compel Discovery, along with a declaration of John P. Walters, was filed in response [ECF No. 76].  Plaintiff then filed a "Notice of Defendant's Failure to Disclose Discovery" [ECF No. 78].

**1.   Request for production of documents 12**

In document request 12, Bryant asks Associate Warden Janda to produce all "Calipatria State Prison's ASU #2 group yard tapes"

from February to July 2008.  (Mot. Compel Disc. Janda 13, ECF No. 66.)  The Defendant objected to the request on foundation, relevance, and evidentiary grounds.  (<u>Id.</u> at 20.)

Bryant asserts that he put Janda on notice of his request for these yard tapes when he filed a grievance asking Janda to investigate Plaintiff's complaints, which would include reviewing the Administrative Segregation Unit ("ASU") group yard videotapes. (<u>Id.</u> at 4.)  In the grievance, Bryant asked that the tapes be preserved.  (<u>Id.</u>)  Plaintiff also notified Defendant of his need for the tapes on May 28 and June 5, 2008, when Bryant stated in his grievance, Log No. Cal-A-08-01027, that he sought "Group yard videos and yard assignment records," and that he intended to initiate civil litigation and would need the yard videotapes as evidence.  (<u>Id.</u> at 4-5.)  Plaintiff suspects that Janda likely has the videotapes but did not produce them because they were not in his favor; to now say the tapes do not exist is an attempt to withhold discovery.  (<u>Id.</u> at 5.)  Moreover, Bryant contends that defense counsel conceded in response to Plaintiff's meet-and-confer letter that the yard tapes are "generally not maintained," yet he did not state that the tapes do not exist.  (<u>Id.</u> at 4.)  The discovery is relevant, according to Bryant, because it will show that "Group yard No. 2" consisted of African-American inmates only, and the tapes will show the disparity of prisoners in ASU two, yard two, compared to the number of inmates in other yards.  (<u>Id.</u> at 6.)

The Defendant counters that Plaintiff has not established that daily videotapes of the exercise yards over a six-month period are relevant to his claims.  (Def. G. Janda's Opp'n 2, ECF No. 76.)  In response to Plaintiff's meet-and-confer letter, Janda reiterated

his relevance objections.  (Id.)  Defense counsel did, however,
also explain that there were no videos because they are only
maintained in response to specific instances that occur on a given
day.  (Id.)  Janda asserts that Bryant's request that the tapes be
preserved, which was made in pre-litigation grievances, does not
bear on the current discovery requests.  (Id.)  To clarify any
misunderstanding, Defendant served Plaintiff a supplemental
response to document request 12 stating that there are, in fact, no
responsive videos.  (Id. at 2-3.)

        a.   Relevance

     In the Second Amended Complaint, Bryant asserts that there are
two yards in "Ad-Seg #2," or ASU two — yard one and yard two.
(Second Am. Compl. 13-14, ECF No. 39.)  Yard one consisted of only
Hispanic prisoners and yard two was comprised of only African-
American inmates.  (Id. at 14.)  The Plaintiff also alleges that
Defendant Lizarraga initiated a "campaign" of racially-motivated
cell moves targeting African-American prisoners who were assigned
to yard two in ASU two.  (Id. at 26.)  Lizarraga moved these
inmates in retaliation to more restrictive cells located in ASU
one.  (Id.)  As a result, the number of inmates in yard two, of ASU
two, was reduced to three inmates, but similarly situated prisoners
in other yards in ASU two were not moved and the numbers of inmates
in those yards did not decrease.  (Id.)  Bryant was eventually
moved by Defendant Lizarraga on July 7, 2008.  (Id.)

     Document production request 12 seeks videotapes for the "ASU
#2 group yard" from February to July 2008.  The footage, if it
exists, could provide information regarding the races of different
inmates, as well as the number of inmates, who attended yard

25                                              08cv02318 W(RBB)

recreation at various times during the six-month period.  It is
unclear whether the "group yard" refers to yards one and two.  If
it does, the information could indicate whether yard two in ASU two
was comprised of only African-American inmates and whether yard one
was comprised of Hispanic inmates, as Plaintiff alleges.  The
footage could also reveal the decreasing number of inmates assigned
to yard two as a result of Lizarraga's retaliatory cell moves,
compared to the number of prisoners assigned to other yards in ASU
two.  To that extent, document request 12 seeks information that is
relevant to Bryant's claim that Lizarraga retaliated against him by
moving Plaintiff and the other yard two African-American inmates to
more restrictive cell placements.  Janda's relevance objection is
overruled.

### b.  Possession, custody, or control

In his Motion, Plaintiff submits that although Associate
Warden Janda initially objected to document request 12 because it
does not seek relevant information, defense counsel John Walters
later suggested in a letter to Bryant that Janda does not possess
the videotapes.  (Mot. Compel Disc. Janda 4-5, 33, ECF No. 66.)  In
the letter, Walters states, "Defendant stands by these objections.
Further, as noted above, video tapes are generally not maintained
unless a specific event or incident happens on that date, in which
case they are maintained as evidence."  (<u>Id.</u> at 33.)

When a party responds to a document request with an answer as
opposed to production or an objection, the party must answer under
oath.  7 James Wm. Moore, et al., <u>Moore's Federal Practice</u>, §
34.13[2][a], at 34-57 (footnote omitted); <u>see id.</u> § 34.14[2][a], at
34-73 (footnote omitted).  If Defendant Janda's response is that

26

there is no relevant material in Defendant's control, he must state so under oath.  See Vazquez-Fernandez v. Cambridge Coll., Inc., 269 F.R.D. 150, 155 (D. P.R. 2010).  Nevertheless, because Janda has not supplied an answer under oath, Plaintiff's Motion to Compel [ECF No. 66] a further response from Defendant Janda to document request 12 in set one ("amended") is **GRANTED**.

   **2.   Request for production of documents 13**

   Request 13 asks Defendant to produce all "Calipatria State Prison's ASU #2 group yard 'Assignment Records,' setting forth the number of inmates assigned to each yard" from February to July 2008.  (Mot. Compel Disc. Janda 13, ECF No. 66.)  Janda responded, "A diligent search is being undertaken for the requested items. Defendant will produce any documents within his possession, custody, or control to the extent any exist."  (Id. at 20.)

   Plaintiff asked Defendant for a specific date by which he would provide the responsive documents.  (Id. at 4.)  In response, Janda indicated that he would only provide Bryant with an "update" on the progress by a date certain, which was just two days before any motion to compel would have to be filed.  (Id.)  In Janda's Opposition, defense counsel submits that he has been attempting to locate the responsive documents and anticipates serving Bryant a supplemental response in approximately one week.  (Def. G. Janda's Opp'n 3, ECF No. 76.)  Janda argues that the Motion to Compel a response to document request 13 should therefore be denied as moot. (Id.)

   Bryant subsequently filed a "Notice of Defendant's Failure to Disclose Discovery," in which he states that he received the supplemental response counsel referred to in the Opposition, but

the production is insufficient.  (Notice Def. Janda's Failure

Disclose 2, ECF No. 78.)  Specifically, Plaintiff contends that

Janda merely produced copies of handwritten notes by prison staff

that do not disclose the number of inmates assigned to the yards;

the notes only reveal the number of inmates who actually attended

the yard on certain days.  (<u>Id.</u>)

Document request 13 explicitly sought documents reflecting the

yard "'Assignment Records,' setting forth the number of inmates

<u>assigned to</u> each yard" from February to July 2008.  (Mot. Compel

Disc. Janda 13, ECF No. 66) (emphasis added).  Janda did not object

to the document request initially or in opposition to the Motion to

Compel and has therefore waived any objection.  <u>See</u> S.D. Cal. Civ.

R. 7.1(f)(3)(c).  Moreover, the yard assignment records are clearly

relevant to Bryant's retaliation claim.  Accordingly, the Defendant

still has not disclosed documents showing the number of prisoners

assigned to each yard during this time period; his supplemental

production is not fully responsive and further production is

warranted.  Defendant Janda is to provide Bryant with all ASU group

two yard assignment records showing the number of inmates assigned

to each yard that are in Janda's possession, custody, or control.

If there are no other responsive documents, the Defendant must,

nevertheless, provide the answer under oath.  <u>See</u> <u>Vazquez-</u>

<u>Fernandez</u>, 269 F.R.D. at 155.  Plaintiff's Motion to Compel a

further response to document request number 13 is **GRANTED**.

**D.   Defendant Lizarraga:  Motion to Compel Responses to**
**Interrogatories 11 and 12 (Set One) [ECF No. 71]**

In "Plaintiff's Motion to Compel Discovery," Bryant seeks an

order compelling Defendant Lizarraga to respond to interrogatories

11 and 12 in set one [ECF No. 71].  Lizarraga filed an Opposition, along with a declaration of John P. Walters [ECF No. 77].  No reply was filed.

**1.   Interrogatories 11 and 12**

Bryant asks Lizarraga in interrogatory 11 to state the races of the inmates assigned to "Calipatria State Prison - ASU #2's group yard No. 1" from January to July 2008.  (Mot. Compel Disc. Lizarraga 13, ECF No. 71.)  In interrogatory 12, Plaintiff asks Lizarraga to state the races of the prisoners assigned to "Calipatria State Prison - ASU #2's group yard No. 2" from January to July 2008.  (Id.)  Although Lizarraga responded separately to each interrogatory, his answers were identical:

> I do not know, and I do not have possession, custody, or control over the documents that may assist in answering this interrogatory.  First, inmates are not assigned to yard groups based on race.  They are assigned based on affiliations.  Second, in order to determine the race of each inmate in the yard group on each day within that seven-month period, the Yard Log Books must be checked for each day for a list of assigned inmates.  The names and CDC numbers of each inmate would then have to be recorded, and used to check the individual Central file of each inmate to determine their race.  Central files are maintained [sic] the prison that inmate is currently housed at.

(Id. at 20.)

Bryant now seeks an order compelling Lizarraga to supplement these answers.  Plaintiff complains that Defendant did not state that he would, at a minimum, conduct a diligent search to locate information that could help him answer the questions.  (Id. at 4.) According to Bryant, Lizarraga's claimed lack of knowledge of these inmates' races is disingenuous because he has worked in ASU two for several years.  (Id. at 5.)  Further, Bryant is only seeking the

29

08cv02318 W(RBB)

1  races of the inmates within the specific time frame, not how those

2  inmates were assigned to the yard group.  (Id.)

3      The Plaintiff also challenges Lizarraga's asserted inability

4  to obtain responsive information.  (Id.)  Bryant argues that he

5  independently obtained several "Calipatria State Prison-

6  Administrative Segregation Daily Yard Activity" forms from a

7  correctional officer working in ASU two who simply walked over to

8  the computer in the staff's office and downloaded the forms for

9  Plaintiff.  (Id.)  One form indicates that the yard has "Controlled

10 Compatible-Black, Northern Hispanic, and Other" inmates and that

11 "Yard Group No. 2" is comprised of all African-American prisoners.

12 (Id.)  In any event, Plaintiff insists that Lizarraga can

13 reasonably obtain the information because he has access to a

14 computer inside of ASU two, and a counselor is present during the

15 week who can download documents relating to inmate housing.  (Id.

16 at 6.)

17     Defendant Lizarraga counters that his responses to

18 interrogatories 11 and 12 are sufficient.  (Def. R. Lizarraga's

19 Opp'n 2, ECF No. 77.)  To determine the inmates' races, Defendant

20 asserts he can not answer the questions by reviewing documents

21 because he would have to review a list of the inmates assigned for

22 each day during that time period, record their names and CDCR

23 numbers, and then "cross-check" them with the central files, which

24 are maintained by the prison where each inmate is currently housed.

25 (Id.)  "In short, there were no readily available sources for

26 Lizarraga to check for the answers to the interrogatories, and

27 Lizarraga could not travel up-and-down the state pulling Central

28 files and investigating Plaintiff's discovery."  (Id. (citing

30

1  <u>Heilman v. Vojkufka</u>, No. CIV S-08-2788 KJM EFB, 2011 U.S. Dist.

2  LEXIS 26004, at *36 (E.D. Cal. Feb. 17, 2011)).)  Lizarraga submits

3  that his response of "I don't know" is therefore sufficient.  (<u>Id.</u>)

4        Defendant responds to Bryant's claim that there is an

5  available source for Lizarraga to obtain responsive information by

6  conceding that the "Daily Yard Activity" form that Plaintiff

7  obtained does, in fact, exist.  (<u>Id.</u> at 3.)  Yet, this form is not

8  available for the seven-month period in 2008 at issue; defense

9  counsel alleges that he visited Calipatria and specifically looked

10 for any available daily yard activity forms from 2008 but was

11 unable to located any.  (<u>Id.</u>; <u>see</u> <u>id.</u> Attach. #1 Decl. Walters 2.)

12 Walters states that he was later informed that staff in the

13 litigation coordinator's office did not have the forms and noted

14 that they were "likely purged."  (<u>Id.</u> Attach. #1 Decl. Walters 2.)

15       Defense counsel states that the only similar items available

16 for that period was the "A5 Yard Gun Log Book" and the

17 "Administrative Segregation Isolation Log Book," which are hard

18 cover journals.  (<u>Id.</u> at 3.)  The yard gun log book for the

19 relevant 2008 period shows the number of prisoners assigned to each

20 yard, and the isolation log book details each inmate's name, CDCR

21 number, and cell assignment, but not his race.  (<u>Id.</u>)  Despite

22 these representations, Lizarraga urges that there is "no available

23 document" for him to review to answer interrogatories 11 and 12.

24 (Def. R. Lizarraga's Opp'n 3, ECF No. 77.)

25       "A party answering interrogatories has an affirmative duty to

26 furnish any and all information available to the party."  7 James

27 Wm. Moore, et al., <u>Moore's Federal Practice</u>, § 33.102[1], at 33-72

28 (footnote omitted).  Interrogatories must be answered "separately

and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).  If a
responding party is unable to provide the requested information, he
may not simply refuse to answer.  Haworth v. Suryakant, No.
1:06-cv-1373-LJO-NEW(TAG), 2007 U.S. Dist. LEXIS 48380, at *5 (E.D.
Cal. June 25, 2007) (quoting Hansel v. Shell Oil Corp., 169 F.R.D.
303, 305 (E.D. Pa. 1996)).  The responding party must state under
oath that he is unable to provide the information and must describe
the efforts he used to obtain the information.  Id. (quoting
Hansel, 169 F.R.D. at 305); see also 7 James Wm. Moore, et al.,
Moore's Federal Practice, § 33.102[3], at 33-75 (footnote omitted).

Here, although Lizarraga has verified his responses to
interrogatories 11 and 12 under oath, he has not explained why he
is unable to provide the information or described the efforts he
made to obtain the information, as required.  The subsequent
statements regarding the availability of the information are
unverified and made by defense counsel in letters or in opposition
to this Motion to Compel.  This is not in compliance with Rule 33
of the Federal Rules of Civil Procedure.  Moreover, although
Lizarraga's attorney has described the available means to ascertain
the names, CDCR numbers, and cell assignments of the inmates housed
in each yard for the seven-month period, Defendant has
insufficiently asserted an inability to ascertain the races of
these prisoners.

If Lizarraga is unable to determine the prisoners' races, he
must state so under oath and describe the steps taken to answer
interrogatories 11 and 12.  See Frontier-Kemper Constructors, Inc.
v. Elk Run Coal Co., 246 F.R.D. 522, 529 (S.D. W. Va. 2007)
(finding that a responding party has a "severe duty" to make every

1  effort to obtain the requested information and, if unsuccessful,

2  must provide an answer detailing the attempts made to ascertain the

3  information).  Bryant is entitled to supplemental, verified

4  responses.  Plaintiff's Motion to Compel responses to

5  interrogatories 11 and 12 in set one from Defendant Lizarraga [ECF

6  No. 71] is **GRANTED**.

7  **E.**   **Defendants Armstrong and Ochoa:  Motion to Compel Responses to**
        **Interrogatories 2 and 7 (Set Two) and Document Request 3 (Set**
8        **Two) [ECF No. 74]**

9        The Plaintiff next filed a "Motion for an Order to Compel

10  Discovery" in which he seeks to compel responses from Defendant

11  Armstrong to interrogatory 2 and document request 3 in set two;

12  Bryant also seeks to compel a response from Defendant Ochoa to

13  interrogatory 7 in set two [ECF No. 74].  Defendants' Opposition to

14  Plaintiff's Motion to Compel Discovery was filed in response, along

15  with a declaration of John P. Walters [ECF No. 83].  Bryant did not

16  file a reply.

17       **1.**   **Armstrong**

18       In interrogatory 2, of set two, Plaintiff asks Armstrong to

19  state the dates and times that Armstrong attended training classes

20  from December 2007 to February 2008.  (Mot. Compel Disc. Armstrong

21  & Ochoa 11, ECF No. 74.)  Defendant Armstrong objected on relevance

22  and evidentiary grounds.  (<u>Id.</u> at 21.)  She also objected that the

23  interrogatory invades her right to privacy and seeks information

24  that is privileged and confidential.  (<u>Id.</u> (citing Cal. Pen. Code

25  §§ 832.7, 832.8).)

26       In document production request 3 in set two, Bryant asks

27  Armstrong to produce all "job description, roster or other

28  document(s)" disclosing the dates and times that she attended

1  training classes at Calipatria from December 2007 to February 2008.

2  (Id. at 16-17.)   Armstrong objected because the request invades her

3  right to privacy and improperly seeks her personnel file, which is

4  privileged and confidential.  (Id. at 31 (citing Cal. Pen. Code §§

5  832.7, 832.8).)

6       Bryant maintains that the information sought in interrogatory

7  2 and document request 3 is relevant because Armstrong makes

8  several assertions about incidents that Plaintiff insists could not

9  have occurred because Armstrong was at a training class on the date

10 and time she asserts Bryant committed the act.  (Id. at 6.)  Also,

11 the information is relevant because it bears on Defendant's

12 credibility.  (Id.)  Defendant Armstrong argues in her Opposition

13 that the dispute over interrogatory 2 and document request 3 is

14 moot because after Bryant filed this Motion, defense counsel

15 provided Plaintiff with documents showing the dates and times

16 Defendant Armstrong and other Defendants attended training from

17 December 2007 to July 2008.  (Defs. Armstrong & Ochoa's Opp'n 2,

18 ECF No. 83.)  The class record produced to Bryant reveals every

19 training class that Armstrong attended from 2006 to September 10,

20 2009, including the date, length, and title of each class.  (Id.

21 Attach. #1 Decl. Walters 3.)

22      The Plaintiff is apparently satisfied with Defendant's

23 production and has not filed anything contesting counsel's

24 representation that the information provided is responsive to the

25 discovery requests.  Consequently, Plaintiff's Motion to Compel

26 responses from Defendant Armstrong to interrogatory 2 and document

27 request 3 in set two [ECF No. 74] is **DENIED** as moot.

28 //

**2.   Ochoa**

In interrogatory 7, Bryant asks Defendant Ochoa to state the reasons the memorandum signed by "former CDCR Secretary Roderick Hickman," dated February 17, 2004, and titled, "'Zero Tolerance Regarding The Code Of Silence,'" was distributed to CDCR employees. (Mot. Compel Disc. Armstrong & Ochoa 43, ECF No. 74.)  Ochoa objected on foundation, speculation, relevance, and evidentiary grounds.  (Id. at 29.)  Without waiving the objections, Ochoa answered, "I do not know.  I was not involved in authoring or distributing the memo."  (Id.)

In the Motion to Compel, Plaintiff contends that Ochoa's response is evasive and incomplete because Defendant has resources available to him to assist him in answering the interrogatory. (Id. at 7.)  Moreover, a simple reading of the memorandum could enable Ochoa to answer completely.  (Id.)  In his Opposition, Defendant maintains that Plaintiff is essentially asking Ochoa to explain why a memorandum that he did not write or distribute was sent to prison staff.  (Defs. Armstrong & Ochoa's Opp'n 3, ECF No. 83.)  Ochoa urges that he also does not have a duty to research the reasons that someone else at CDCR wrote or distributed a memorandum in 2004.  (Id.)  Therefore, Defendant's answer, "I do not know," was sufficient.  (Id.)

As discussed previously, Ochoa has an affirmative duty to provide Bryant with all responsive information reasonably available to him.  7 James Wm. Moore, et al., Moore's Federal Practice, § 33.102[1], at 33-72 (footnote omitted).  He does not, however, have a duty to search for new information.  Id.  If Ochoa is unable to answer interrogatory 7 by stating the reasons that the memorandum

was distributed to Calipatria staff, he must provide that answer
under oath and must set forth the efforts he made to attempt obtain
the answer.   See Haworth, 2007 U.S. Dis. LEXIS 48380, at *5
(quoting Hansel, 169 F.R.D. at 305); see also Frontier-Kemper
Constructors, Inc., 246 F.R.D. at 529.   Here, Defendant verified
his response, "I do not know," but he did not specify the steps he
took to attempt to ascertain the reason for the distribution.
(Mot. Compel Disc. Armstrong & Ochoa 50, ECF No. 74.)

Plaintiff's Motion to Compel a further response from Defendant
Ochoa to interrogatory 7 in set two [ECF No. 74] is **GRANTED.**  Ochoa
is to utilize all reasonably available means to determine the
reasons the memorandum was distributed.   If after doing so,
Defendant still is unable to respond to the interrogatory, he must
state so under oath and must describe the attempts he made to
locate the information.

**F.**   **Defendant Ochoa:  Motion to Compel Responses to Document
Requests 1, 2, and 3 (Set Three) [ECF No. 82]**

Bryant also filed a "Motion to Compel Discovery," in which he
seeks an order compelling Defendant Ochoa to respond to document
requests 1, 2, and 3 in set three [ECF No. 82].   Ochoa filed an
Opposition to Plaintiff's Motion to Compel in response [ECF No.
88].   No reply was filed.

**1.   Requests for production of documents 1, 2, and 3**

The three document requests are essentially the same.   In
document request 1 in set three, Plaintiff asks Ochoa to produce
any "policy, regulation, directive, or other document(s) which
would support" Defendant Ochoa's assertion made in his second level
response to Plaintiff's Log No. Cal-A-08-00207 appeal, in which

36

1  Ochoa found that Defendant Armstrong did not violate any CDC policy

2  on May 21, 2008. (Mot. Compel Disc. Ochoa 10, Nov. 4, 2011, ECF

3  No. 82.) Defendant provided the following answer in response to

4  the document request:

5          Defendant did not review any specific policy or
        regulation in conducting the Second Level Review.
6       Defendant conducted the review based on the evidence and
        circumstances, and on Defendant's general familiarity
7       with CDCR policy and knowledge that that [sic] staff
        should not racially discriminate against inmates.
8       Therefore, there are no responsive documents.

9  (Id. at 15.) Ochoa did not object to the request on any ground and

10 did not verify his response. (See id. at 15-17.)

11      Next, Bryant asks Ochoa in document request 2 to produce any

12 "policy, regulation, directive, or other document(s) to support"

13 Ochoa's claim made in his second level response to Plaintiff's Log

14 No. Cal-A-08-00311 appeal, in which Ochoa found that Defendant

15 Armstrong did not violate any CDC policy on May 21, 2008. (Id. at

16 10.) In response, Defendant provided the following answer:

17         Defendant did not review any specific policy or
        regulation in conducting the Second Level Review.
18      Defendant conducted the review based on the evidence and
        circumstances, and on Defendant's general familiarity
19      with CDCR policy and knowledge that that [sic] staff
        should not racially discriminate, issue false chronos, or
20      retaliate against inmates. Therefore, there are no
        responsive documents.
21

22 (Id. at 15.) The Defendant did not object to the request and did

23 not verify his response. (See id. at 15-17.)

24      Finally, in document request 3, Plaintiff asks Ochoa to

25 produce any "policy, regulation, directive, or other document(s)

26 which support" Ochoa's claim made in his "'Second Level Response'"

27 to Plaintiff's Log No. Cal-A-08-01027 appeal, in which Ochoa found

28 that Defendant Armstrong did not violate any CDC policy on

September 4, 2008.  (<u>Id.</u> at 10-11.)  Ochoa answered:

>       Defendant did not review any specific policy or
> regulation in conducting the Second Level Review.
> Defendant conducted the review based on the evidence and
> circumstances, and on Defendant's general familiarity
> with CDCR policy and knowledge that that [sic] staff
> should not racially discriminate or retaliate against
> inmates.  Therefore, there are no responsive documents.

(<u>Id.</u> at 15.)  Again, Ochoa did not object.  (<u>See</u> <u>id.</u> at 15-17.)  He also did not verify his response.  (<u>See</u> <u>id.</u>)

Plaintiff argues that Defendant's responses are evasive and incomplete because Bryant simply asks Ochoa for the policies that would support his conclusion that Armstrong and Lizarraga did not violate CDCR policy.  (<u>Id.</u> at 4.)  Further, defense counsel indicated in a subsequent letter that "while it is generally policy that racial discrimination is prohibited, there is no written regulation or policy."  (<u>Id.</u> at 27.)  Yet, notably, Bryant argues that counsel did not also state that there is no policy or regulation prohibiting retaliation against inmates.  (<u>Id.</u> at 5.)

Ochoa contends that his responses are sufficient because they informed Bryant that Defendant did not review any particular policy or regulation when considering and denying Plaintiff's inmate appeals.  (Def. Ochoa's Opp'n 2, Nov. 28, 2011, ECF No. 88.)  The Defendant properly answered the document request by stating that there are no responsive documents and later informed Bryant that there are no relevant written policies.  (<u>Id.</u>)  Moreover, according to Ochoa, Plaintiff seeks to compel Defendant to identify policies to show whether other Defendants violated CDCR policies; to this extent, the requests improperly seek a legal conclusion and potentially attorney work product.  (<u>Id.</u>)

As discussed previously, when a response to a production of documents is an answer instead of production or an objection, the party must answer under oath.  7 James Wm. Moore, et al., Moore's Federal Practice, § 34.13[2][a], at 34-57 (footnote omitted); see id. § 34.14[2][a], at 34-73 (footnote omitted).  The document requests explicitly seek documents that would support Ochoa's decision on Bryant's second level appeal.  Thus, Defendant's unsworn answer to the document requests stating that he did not actually review any policy when making his determination is insufficient.  Defense counsel's subsequent statement to Plaintiff that there are no written policies or regulation prohibiting racial discrimination is also inadequate because it was not made by Ochoa under oath and does not address policies regarding retaliation.

Bryant's Motion to Compel Ochoa to provide supplemental responses to document requests 1, 2, and 3 in set three [ECF No. 82] is **GRANTED**.  Ochoa shall provide Bryant with a verified response to the three document requests that also includes the Defendant's attempts to locate responsive documents.

**G.**  **Defendant Janda:  Motion to Compel Responses to Document Requests 3, 4, and 5 (Set Three) [ECF No. 86]**

The Plaintiff filed a "Motion to Compel Discovery," in which he moves for an order compelling Defendant Janda to respond to document requests 3, 4, and 5 in set three [ECF No. 86].  Janda filed an Opposition to Plaintiff's Motion to Compel and a declaration of John P. Walters [ECF No. 89].  Bryant did not file a reply.

Document request 3 in set three asks Associate Warden Janda to produce all "grievances, complaints, or other documents received by

prison staff Defendant Ochoa or his agents" at Calipatria since
June 7, 2007, regarding the "mistreatment of inmates by Defendants
Lizarraga, Catlett, Armstrong, or Trujillo," as well as the
corresponding investigative files and documents created in
response.  (Mot. Compel Disc. Janda 12, Nov. 21, 2011, ECF No. 86.)
Defendant objected because the request is vague, overbroad, and
irrelevant.  (Id. at 17.)  Janda indicated that he would, however,
respond if Bryant narrowed the request to claims related to the
ones in this lawsuit.  (Id.)

In document request 4 in set three, Bryant asks Defendant to
provide him with all inmate "grievances, complaints, or other
documents" received by Janda or his agents at Calipatria regarding
"allegations of racial discrimination or retaliation by staff on
inmates since June 7, 2007."  (Id. at 13.)  Defendant objected on
overbreadth and relevance grounds, but indicated he would provide a
supplemental response if Bryant narrowed the request.  (Id. at 18.)

In document request 5 in set three, the Plaintiff asks Janda
to disclose the following:

> Any and all personnel files of Defendant Ochoa,
> Janda, Trujillo, Catlett, Lizarraga, and Armstrong that
> relate to discipline and/or training of the individual
> defendants.  (Meaning training records, disciplinary
> records which include, but are not limited to, employee
> performance appraisals or information related to
> defendants' ethics, interpersonal relationships, decision
> making abilities, promotions, interviews with respect to
> internal investigations and work and safety habits.)

(Id. at 13.)  Janda objected because the request seeks information
that is not relevant and invades his right to privacy.  (Id. at
18.)  Moreover, the request is vague and ambiguous.  (Id.)  Janda
did note, however, that he would supplement his response if Bryant
narrowed the request.  (Id.)

1    In the Opposition, defense counsel submits that the dispute as
2 to all three document requests is moot, and Bryant's Motion should
3 therefore be denied. (Def. Janda's Opp'n 2, Dec. 5, 2011, ECF No.
4 89.) Plaintiff filed this Motion to Compel while the parties were
5 still engaged in the meet-and-confer process. (_Id._) After filing
6 the Motion, Bryant agreed to narrow his requests to records
7 relating to the discipline or training of the individual
8 Defendants. (_Id._ Attach. #1 Decl. Walters 2; _see_ Mot. Compel Disc.
9 Janda 28, Nov. 21, 2011, ECF No. 86.) In a subsequent letter,
10 Defendant's counsel responded by stating that Janda would provide
11 supplemental responses to the extent the requests for records were
12 limited to discipline of the Defendants for conduct similar to that
13 claimed in the case, retaliation and discrimination. (Def. Janda's
14 Opp'n Attach. #1 Decl. Walters 2, Dec. 5, 2011, ECF No. 89.)
15 Counsel states that he then provided Bryant with some of the
16 supplemental responses and intended to provide him with the
17 remaining responses shortly; because Bryant never responded to
18 Walters's letter, counsel assumed there was an agreement as to the
19 limited scope. (_Id._ at 2-3.) Therefore, Janda explains that the
20 dispute is moot.

21    The Plaintiff has not filed a reply or any brief contesting
22 the statements made by defense counsel, and there is no indication
23 that Bryant considers the issue still in dispute. The documents
24 attached to the Motion and the Opposition are consistent with
25 counsel's representations. Consequently, Bryant's Motion to Compel
26 supplemental responses from Janda to document requests 3, 4, and 5
27 in set three [ECF No. 86] is **DENIED** as moot.
28 //

**IV.   CONCLUSION**

Plaintiff's Motions to Compel are **GRANTED** in part and **DENIED**
in part for the reasons set forth above.

IT IS HEREBY ORDERED:

1.   Plaintiff's Motion to Compel further responses by
     Defendant Ochoa to document requests 1, 2, 3, and 4 in
     set one [ECF No. 53] is **GRANTED**.

2.   The Motion to Compel responses from Defendant Armstrong
     to interrogatories 1, 2, and 3 in set one and document
     requests 1, 2, and 3 in set two [ECF No. 56] is **GRANTED**
     in part and **DENIED** in part.  With respect to
     interrogatories 1 and 2, the Motion is **GRANTED**, but for
     interrogatory 3, the Motion is **DENIED** as moot.  For
     document requests 1 and 2, Bryant's request is **DENIED**,
     and for document request 3, Plaintiff's Motion is **DENIED**
     as moot.

3.   Bryant's Motion to Compel responses from Defendant Janda
     to document request 12 and 13 in set one ("amended") [ECF
     No. 66] is **GRANTED**.

4.   Plaintiff's request for an order compelling responses to
     interrogatories 11 and 12 in set one from Defendant
     Lizarraga [ECF No. 71] is **GRANTED**.

5.   The Motion to Compel responses from Defendant Armstrong
     to interrogatory 2 and document request 3 in set two and
     responses from Defendant Ochoa to document request 3 in
     set two [ECF No. 74] is **GRANTED** in part and **DENIED** in
     part.  The request for an order compelling responses from
     Armstrong to interrogatory 2 and document request 3 is

1          **DENIED** as moot; for interrogatory 7 to Ochoa, Bryant's

2          Motion is **GRANTED**.

3     6.   Plaintiff's request for an order compelling Ochoa to

4          provide supplemental responses to document requests 1, 2,

5          and 3 in set three [ECF No. 82] is **GRANTED**.

6     7.   Bryant's Motion to Compel supplemental responses from

7          Defendant Janda to document requests 3, 4, and 5 in set

8          three [ECF No. 86] is **DENIED** as moot.

9     The Defendants' discovery responses must be served no later

10   than June 29, 2012.

11

12   DATE:   June 14, 2012          _____

13                                       RUBEN B. BROOKS
                                    United States Magistrate Judge

14   cc:  Judge Whelan
          All Parties of Record

15

16

17

18

19

20

21

22

23

24

25

26

27

28