UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STANFORD PAUL BRYANT, | ) | Civil No. 08cv02318 W(RBB) |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING DISCOVERY** |
| | ) | **MOTIONS [ECF NOS. 53, 56, 66,** |
| v. | ) | **71, 74, 82, 86]** |
| | ) | |
| T. ARMSTRONG, Correctional | ) | |
| Officer; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
|_____| ) | |

On December 12, 2008, Plaintiff Stanford Paul Bryant, a state prisoner proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 [ECF No. 1]. Bryant filed a First Amended Complaint on March 3, 2009 [ECF No. 3], and a Second Amended Complaint on June 23, 2010 [ECF No. 39].

Following several motions to dismiss, Defendants Armstrong, Catlett, Janda, Lizarraga, Ochoa, and Trujillo filed an Answer to the Second Amended Complaint on April 29, 2011 [ECF No. 49]. The Court subsequently held a case management conference and the parties commenced discovery [ECF Nos. 51-52]. Cross-motions for summary judgment are currently pending [ECF Nos. 91-92]. All

1  pretrial dates have been vacated, pending a ruling on the summary
2  judgment motions [ECF No. 104].

3       Also pending before the Court are Plaintiff's seven motions to
4  compel discovery from four of the six remaining Defendants [ECF
5  Nos. 53, 56, 66, 71, 74, 82, 86].[1]  The Court finds the motions to
6  compel suitable for resolution on the papers, pursuant to Civil
7  Local Rule 7.1.  See S.D. Cal. Civ. R. 7.1(d)(1).  For the reasons
8  stated below, Bryant's motions are **GRANTED** in part and **DENIED** in
9  part.

10                              **I.**

11                       **FACTUAL BACKGROUND**

12      The Plaintiff contends in count one that Defendant Armstrong
13  violated the Equal Protection Clause by discriminating against
14  Bryant because of his race.  (Second Am. Compl. 13, 16–17, ECF No.
15  39.)[2]  The Defendant allegedly scheduled Plaintiff and other
16  African-American inmates to attend the law library during times
17  that conflicted with their yard recreation; in contrast, Armstrong
18  scheduled Hispanic inmates for law library time that did not
19  interfere with yard time.  (Id. at 13–17.)

20      In count two, Bryant argues that Defendant Armstrong
21  retaliated against him for submitting an inmate grievance against
22  Armstrong for racial discrimination.  (Id. at 19–20.)  According to
23  Bryant, Armstrong retaliated by filing a false "Information
24  Chrono."  (Id. at 22.)

25

26      [1]  The Court will cite to each discovery motion using the page
    numbers assigned by the electronic case filing system.
27
28      [2]  Because Bryant's Second Amended Complaint is not
    consecutively paginated, the Court will also cite to it using the
    page numbers assigned by the electronic case filing system.

The Plaintiff argues in count three that after he and another inmate submitted grievances against Armstrong, Defendant Lizarraga retaliated against Bryant and other African-American prisoners by moving them to more restrictive cell placements, threatening Plaintiff, and filing a false disciplinary report and rule violation charge against Bryant.  (Id. at 25-30.)  Further, Defendant Trujillo purportedly falsified a report and refused to permit the Plaintiff to call witnesses at his disciplinary hearing.  (Id. at 34.)  Defendants Catlett, Janda, and Ochoa sanctioned the retaliatory conduct of Armstrong, Lizarraga, and Trujillo.  (Id. at 41.)

Finally, in count four, Plaintiff alleges that Defendants Armstrong, Lizarraga, and Trujillo violated California Civil Code sections 52.1, 51.7, and 52(b) by interfering with Bryant's constitutional rights because of his race.  (Id. at 43.)  Armstrong and Lizarraga threatened violence against Plaintiff if he continued to discuss or pursue grievances alleging racial discrimination.  (Id. at 43-44.)  Lizarraga is claimed to have "committed an act of violence" against Plaintiff by removing legal documents from his cell without permission.  (Id. at 44.)  Similarly, Bryant contends that Defendant Trujillo intimidated Plaintiff by having three Hispanic officers surround him in a "menacing manner."  (Id. at 44-45.)

## II.

### LEGAL STANDARDS

It is well established that a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense.  Fed. R. Civ. P. 26(b)(1).  Relevant information need not

08cv02318 W(RBB)

be admissible at trial so long as the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence.  Id.  Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that may be in the case.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)) (footnote omitted).  Rule 37 of the Federal Rules of Civil Procedure authorizes the propounding party to bring a motion to compel responses to discovery.  Fed. R. Civ. P. 37(a)(3)(B).  The party opposing the discovery bears the burden of resisting disclosure.  Miller v. Pancucci, 141 F.R.D. 292, 299 (C.D. Cal. 1992).

**III.**

**DISCUSSION**

**A.   Defendant Ochoa:  Motion to Compel Responses to Document Requests 1, 2, 3, and 4 (Set One) [ECF No. 53]**

Plaintiff filed a "Motion for an Order to Compel Discovery," in which he seeks an order compelling Defendant Ochoa to respond to requests for production of documents 1, 2, 3, and 4 in set one [ECF No. 53].  Defendant T. Ochoa's Opposition to Plaintiff's Motion for an Order to Compel Discovery was later filed, along with a declaration of John P. Walters [ECF No. 57].  "Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for an Order to Compel Discovery" was also filed [ECF No. 60].

In request for production of documents 1, Bryant seeks "[a]ny and all documents and writings, as 'writings' is defined by Federal Rules of Evidence 1001 that discloses [sic] the contents of any and all questions, answers or statements resulting from any and all

4

inquiries made in Appeal log #CAL-A-08-00207 . . . ." (Mot. Order Compel Disc. Ochoa 4, ECF No. 53.) Request 2 is identical to request 1, except it relates to appeal log #CAL-A-08-00311. (Id. at 11-12.) Requests 3 and 4 are also identical, but they concern appeal logs #CAL-A-08-02223 and #CAL-A-08-01027, respectively. (Id. at 12.) Defendant Ochoa objects that all four document requests are vague and ambiguous. (Id. at 16-17.) Defendant also states that a diligent search was undertaken and that all responsive documents within Ochoa's control have been provided. (Id.)

In his Motion to Compel, Bryant maintains that Ochoa improperly failed to produce any records even though they are part of Calipatria's investigative files and therefore in Ochoa's possession. (Id. at 4.) Defendant's responses are incomplete because Plaintiff has received documents that "indicate that there [were] several 'inquiries' conducted as a result of [Bryant's] grievances Log Nos. Cal-A-08-00207, #Cal-A-08-00311, and #Cal-A-08-01027." (Id. at 9.) Plaintiff argues that Ochoa signed related "Confidential Supplement to Appeals" documents on April 5, 2008, and July 27, 2008. (Id.) Any attempt by Ochoa to claim that the documents do not exist, Bryant contends, is therefore evasive. (Id. at 6.)

### 1. Timeliness of Defendant's responses and objections

Plaintiff submits in his declaration that he served Ochoa with a set of document requests on June 15, 2010. (Id. at 8.) This Court subsequently stayed all discovery pending resolution of the then-pending motion to dismiss. (Id.) Yet, according to Bryant, Ochoa did not respond to the discovery until nearly two months

1  later on June 1, 2011. (Id. at 5.)  Therefore, Plaintiff urges

2  that Ochoa has waived his objections by failing to timely respond

3  to the discovery requests. (Id.)

4     In his Opposition, Defendant argues that Bryant misinterprets

5  the Court's order staying discovery and he does not specify what

6  dates or deadlines he uses to assert the responses were almost two

7  months late. (Def. T. Ochoa's Opp'n 2, ECF No. 57.)  According to

8  the Defendant, Plaintiff served the document requests on June 15,

9  2010, and on July 14, 2010, the Court issued a minute order staying

10  all discovery pending a ruling on the motion to dismiss. (Id.)

11  Then, on January 7, 2011, in its Report and Recommendation, "the

12  Court stayed all discovery 'pending the motion to dismiss.'" (Id.)

13  Ochoa represents, "No further details were given." (Id.)

14  Defendant asserts that on February 11, 2011, the district court

15  issued an order on the motion to dismiss, and Defendants filed an

16  Answer on April 29, 2011. (Id.)

17     Ochoa submits, "Thus, the orders stayed discovery pending the

18  motion to dismiss, but did not specify any exact date or method for

19  resuming discovery." (Id.)  On May 2, 2011, defense counsel mailed

20  a letter to Bryant concerning the discovery and suggested that,

21  because the stay was lifted, Plaintiff's first set of document

22  requests be deemed served that day and a response would be due May

23  31, 2011. (Id.)  Counsel asked Plaintiff to advise him of any

24  objections to the proposal. (Id.)  Defendant served his responses

25  to the discovery requests on May 24, 2011. (Id.)  Accordingly,

26  Ochoa maintains that his responses were timely served, and no

27  objections were waived. (Id. at 3.)

28

In his Reply, Bryant urges that Ochoa misstates the record. (Pl.'s Reply Defs.' Opp'n 2, ECF No. 60.)  Plaintiff points out that this Court specifically stayed discovery until thirty days after the district court issued an order on Defendants' motion to dismiss. (Id.)  Bryant asserts, "The Defendant Ochoa does not claim that he did not have knowledge of this Court's order or the specific date that the district court judge issued the order on Defendant's Motion to Dismiss, in fact Defendant Ochoa cites the specific date which the district court judge issued the order . . . ." (Id.)

On July 2, 2010, Defendants filed a Motion for a Protective Order to Stay Discovery Pending the Motion to Dismiss [ECF No. 41]. On July 15, 2010, this Court issued a temporary stay of discovery, pending resolution of the Motion to Dismiss and the Motion for a Protective Order [ECF No. 42].  In their Motion for a Protective Order, the Defendants alleged that on June 15, 2010, after Plaintiff filed his Second Amended Complaint but before Defendants moved to dismiss, Plaintiff served five sets of discovery on Defendants. (Mot. Protective Order Attach. #1 Mem. P. & A. 2, ECF No. 41.)  The Defendants maintained that all discovery should be stayed until their motion to dismiss was resolved. (Id. at 3.)

This Court, on January 7, 2011, recommended that the motion to dismiss be granted in part and denied in part and ordered that all discovery be stayed [ECF No. 46].  As to the Defendants' request for a protective order, the Court explicitly stated:

> Applying these guidelines, a temporary stay on discovery until resolution of the Motion to Dismiss is appropriate.  Defendants filed this Motion after they were served with discovery and met with Plaintiff in an attempt to resolve the issue.  Defendants do not seek a

08cv02318 W(RBB)

1       protective order that will remain in effect after their
        Motion to Dismiss is resolved, or until any
2       answer is filed; they merely request that discovery be
        stayed until the Motion to Dismiss is ruled upon.
3

4   (Order Granting Defs.' Mot. Protective Order 42, ECF No. 46

5   (internal citations omitted).)

6       The Court addressed the duration and extent of the stay as

7   follows:

8           Defendants have shown good cause to stay discovery
        pending a ruling on their Motion to Dismiss.  A stay of
9       all discovery shall be in effect from the date this
        Report and Recommendation is filed until thirty days
10      after the district court judge issues an order on
        Defendants' Motion to Dismiss Plaintiff's Second Amended
11      Complaint [ECF No. 40].

12  (Id. (internal citations omitted).)

13      In his Opposition, Ochoa references this January 7, 2011 Order

14  staying all discovery and represents that "the Court stayed all

15  discovery 'pending the motion to dismiss[]'" yet misrepresents that

16  "[n]o further details were given." (Def. T. Ochoa's Opp'n 2, ECF

17  No. 57.)  Ochoa continues, "Thus, the orders stayed discovery

18  pending the motion to dismiss, but did not specify any exact date

19  or method for resuming discovery." (Id.)  This is a flagrant

20  misrepresentation of the record.  Either Defendant and his attorney

21  failed to read the order to which they repeatedly and explicitly

22  rely, or they deliberately misled the Court.  Both possibilities

23  are disconcerting.

24      In any event, Defendant Ochoa's responses are untimely.

25  Because the district court issued its ruling on the motion to

26  dismiss on February 11, 2011 [ECF No. 47], the stay of discovery

27  was in effect for thirty days, or until March 14, 2011, as March

28  13, 2011, fell on a Sunday. (See Order Granting Defs.' Mot.

Protective Order 42, ECF No. 46); see also Fed. R. Civ. P.
6(a)(1)(C); S.D. Cal. Civ. R. 7.1(c).  Ochoa ignored Plaintiff's
discovery requests until May 2, 2011, when defense counsel mailed
Bryant a letter referencing the stay and suggesting that the
discovery be deemed served that day.  (See Def. T. Ochoa's Opp'n
Attach. #1 Decl. Walters 5, ECF No. 57.)  Plaintiff did not receive
Defendant's objections and responses until June 1, 2011, which is
seventy-nine days after the stay expired.  Ochoa's responses to
document requests 1, 2, 3, and 4 in set one are untimely.

    Unlike Rule 33, which governs interrogatories to parties, Rule
34 of the Rules of Civil Procedure does not provide that a
responding party waives an objection not timely stated.  Compare
Fed. R. Civ. P. 33(b)(4), with Fed. R. Civ. P. 34(b)(2)(C).
Nevertheless, generally, when a party fails to provide any response
or objection to interrogatories or document requests, courts deem
all objections waived and grant a motion to compel.  See Richmark
Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir.
1992) (finding that a party who failed to timely object to
interrogatories and document production requests waived any
objections); 7 James Wm. Moore, et al., Moore's Federal Practice, §
33.174[2], at 33-106, § 34.13[2][a], at 34-56 to 34-56.1 (3d ed.
2012).  "It is well established that a failure to object to
discovery requests within the time required constitutes a waiver of
objection."  Richmark, 959 F.2d at 1473.

    Although the discovery stay was in effect through March 14,
2011, Ochoa did not serve his objections and responses until May
24, 2011, and Bryant did not receive them until June 1, 2011,
roughly one and one-half months late.  Accordingly, Ochoa has

1  waived any objections and Plaintiff's document requests 1, 2, 3,

2  and 4 in set one [ECF No. 53].

3      In response to a request for production of documents under

4  Rule 34 of the Federal Rules of Civil Procedure, a party is to

5  produce all relevant documents in his "possession, custody, or

6  control." Fed. R. Civ. P. 34(a)(1).  A party may be required to

7  produce a document that is in the possession of a nonparty entity

8  if the party has the legal right to obtain the document.  Soto v.

9  City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).  The term

10 "control" is broadly construed, and it includes documents that the

11 responding party has the legal right to obtain from third parties.

12 See id. (citations omitted); 7 James Wm. Moore, et al., Moore's

13 Federal Practice, § 34.14[2][b], at 34-73 to 34-75 (footnotes

14 omitted).

15     "[W]hen a response to a production of documents is not a

16 production or an objection, but an answer, the party must answer

17 under oath."  7 James Wm. Moore, et al., Moore's Federal Practice,

18 § 34.13[2][a], at 34-57 (footnote omitted).  Similarly, if a

19 responding party contends that documents are not in its custody or

20 control, the court may require more than a simple assertion to that

21 effect.  See id. § 34.14[2][a], at 34-73 (footnote omitted); see

22 also Schwartz v. Marketing Publ'g Co., 153 F.R.D. 16, 21 (D. Conn.

23 1994) (citing cases establishing that the absence of possession,

24 custody, or control of documents that have been requested must be

25 sworn to by the responding party).

26     Here, Ochoa responded to document requests 1, 2, 3, and 4 by

27 stating that he has produced all relevant records that are in his

28 possession or control.  It is not clear that the Defendant took

reasonable steps under the above standards to locate relevant records.  Plaintiff's Motion to Compel further responses to these requests [ECF No. 53] is **GRANTED**.  Ochoa must supplement his responses and produce additional documents in his custody or control that reflect inquiries and related investigations conducted in response to Plaintiff's four grievances, as well as all supplemental appeals documents, including any allegedly signed by Ochoa.  If there are no other responsive documents in Defendant's possession, custody, or control, after conducting this further attempt to locate records, Ochoa must state so under oath and describe efforts he made to locate responsive documents.  <u>See</u> <u>Vazquez-Fernandez v. Cambridge Coll., Inc.</u>, 269 F.R.D. 150, 155 (D. P.R. 2010).

**B.**  <u>Defendant Armstrong:  Motion to Compel Responses to</u>
<u>Interrogatories 1, 2, and 3 (Set One) and Document Requests 1,</u>
<u>2, and 3 (Set One) [ECF No. 56]</u>

Next, Plaintiff filed a "Motion for an Order to Compel Discovery" with a supporting brief and a declaration of Stanford P. Bryant, in which he seeks an order compelling Defendant Armstrong to respond to interrogatories 1, 2, and 3 in set one as well as document requests 1, 2, and 3 in set one [ECF No. 56].  Defendant T. Armstrong's Opposition to Plaintiff's Motion for an Order to Compel Discovery was filed in response, along with a declaration of John P. Walters [ECF No. 59].  "Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for an Order to Compel Discovery" was also filed [ECF No. 70].

**1.  Interrogatory 1**

In interrogatory 1, Bryant asks Correctional Officer Armstrong, "State any and all reasons why you no longer work for

CDCR at Calipatria State Prison." (Mot. Order Compel Disc. Armstrong Attach. #2 Decl. Bryant 4, ECF No. 56.) Armstrong objected that the information was not relevant, the interrogatory lacks foundation, and it should be excluded under Federal Rule of Evidence 403. (Id. at 13.) Defendant further objected that the question invades her right to privacy under California Penal Code §§ 832.7 and 832.8, and seeks information that is privileged and confidential. (Id.)

In his Motion to Compel, Bryant asserts he believes that Defendant no longer works at Calipatria because she was arrested for committing criminal acts with, or on behalf of, the "Southern California Hispanic Street gang(s)," and she was fired from CDCR as a result. (Id. Attach. #1 Br. 3.) Plaintiff argues that Armstrong has conceded in response to document request 1 that she is no longer employed by CDCR. (Id.) Bryant maintains that this interrogatory seeks relevant information that could lead to evidence bearing on Defendant's intent to discriminate against African-American inmates and favor Hispanic inmates. (Id. at 3-4.)

Although Armstrong raised multiple objections when initially responding to the interrogatories, the Court will only address the ones she elected to pursue when opposing this Motion. The Defendant now argues that interrogatory 1 seeks information regarding the personnel records of a correctional officer, which is confidential. (Def. T. Armstrong's Opp'n 2, ECF No. 59.) Armstrong submits, "In the context of disclosure of confidential peace officer records, federal courts are bound by California law." (Id. (citing Cal. Evid. Code § 1043).)

### a.   Privileged and confidential

As preliminary matter, the Court must determine whether state or federal law applies to Defendant's assertion of privilege. Armstrong represents that federal courts must apply state privilege law as well as the procedures applicable to peace officers' personnel records and Pitchess motions.[3] (See Def. T. Armstrong's Opp'n 2, ECF No. 59.)  This is an inaccurate statement of the law.

State privilege law does not govern discovery issues in federal § 1983 cases.  See Kerr v. U.S. District Court for the N. Dist. of Cal., 511 F.2d 192, 197 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976); Crowe v. County of San Diego, 242 F. Supp. 2d 740, 749-50 (S.D. Cal. 2003); Kelly v. City of San Jose, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987); see also Fed. R. Evid. 501; Miller, 141 F.R.D. at 299.  "In civil rights cases brought under federal statutes, questions of privilege are resolved by federal law." Hampton v. City of San Diego, 147 F.R.D. 227, 228, 230 (S.D. Cal. 1993) (citing Kerr, 511 F.2d at 197); Miller, 141 F.R.D. at 298-99 (comparing federal and California discovery rules at length, finding direct conflicts between them, and holding that federal discovery rules govern § 1983 civil rights actions).  "This theme has been interpreted by the Ninth Circuit to include the discovery of personnel files, despite claims of state-created privileges." Miller, 141 F.R.D. at 297.  Here, Armstrong applies the wrong legal standard altogether when arguing that each request seeks privileged, confidential information.  (See Def. T. Armstrong's

---

[3]   See Cal. Evid. Code § 1043; Cal. Penal Code § 832.7 (West 2008); Pitchess v. Superior Court, 11 Cal.3d 531, 552 P.2d 305, 113 Cal. Rptr. 897 (1974) ("Pitchess").

1  Opp'n 2, ECF No. 59).   Notwithstanding this shortcoming,

2  Defendant's objection fails under federal law.

3       Federal common law recognizes a qualified privilege for

4  official information, such as information in government personnel

5  files.  Kerr, 511 F.2d at 197-98.  Defendant Armstrong must comply

6  with the procedural requirements for asserting the official

7  information privilege.  See Rackliffe v. Rocha, No. 1:07-cv-00603-

8  AWI-DLB PC, 2012 U.S. Dist. LEXIS 57973, at *10 (E.D. Cal. Apr. 6,

9  2012) ("Defendants do not explain how the interrogatory . . . would

10 violate official information privilege."); Williams v. Walker, No.

11 CIV S-07-2385 WBS GGH P, 2009 U.S. Dist. LEXIS 122970, at *24-26

12 (E.D. Cal. Dec. 22, 2009) (explaining that to object to

13 interrogatories on the basis of the official information privilege,

14 an appropriately delegated prison official must personally consider

15 the material requested and explain why it is privileged); Gonzalez

16 v. City of Calexico, No. 03CV2005 WQH (PCL), 2006 U.S. Dist. LEXIS

17 93144, at *11-12 (S.D. Cal. Dec. 22, 2006) (stating requirements to

18 invoke the official information privilege for interrogatories).

19      To determine whether information in government personnel files

20 is subject to the official information privilege, federal courts

21 weigh the potential benefits of disclosure against the potential

22 disadvantages.  Sanchez v. City of Santa Ana, 936 F.2d 1027,

23 1033-34 (9th Cir. 1990).  In civil rights cases against corrections

24 officials, this balancing approach is moderately "pre-weight[ed] in

25 favor of disclosure."  Kelly, 114 F.R.D. at 661.

26      Before courts engage in this balancing, however, the party

27 asserting the privilege must make a "substantial threshold

28 showing."  Soto, 162 F.R.D. at 613.  Specifically, the party must

14                                                    08cv02318 W(RBB)

serve an objection to each discovery request that explicitly "invokes the official information privilege by name." <u>Kelly</u>, 114 F.R.D. at 669.  The withholding party must also serve the requesting party a privilege log or an equivalent that specifically identifies the information that is purportedly protected from disclosure.  <u>Hampton</u>, 147 F.R.D. at 230.  To support each objection, the party alleging privilege must submit an affidavit from a responsible official making several specific affirmations as to the confidentiality of the information.  <u>Kelly</u>, 114 F.R.D. at 669-70.  If the nondisclosing party does not meet this initial burden of establishing cause to apply the privilege, the court must order disclosure of the documents; if the party meets this initial burden, the court generally conducts an in camera review of the material and balance each party's interests.  <u>Soto</u>, 162 F.R.D. at 613; <u>Kelly</u>, 114 F.R.D. at 671.

In <u>Kelly</u>, the court explained:

> Unless the government, through competent declarations, shows the court what interests would be harmed, how disclosure under a protective order would cause the harm, and how much harm there would be, the court cannot conduct a meaningful balancing analysis.  And because the burden of justification must be placed on the party invoking the privilege, a court that cannot conduct a meaningful balancing analysis because the government has not provided the necessary information would have no choice but to order disclosure.

<u>Kelly</u>, 114 F.R.D. at 669; <u>see</u> <u>Chism v. County of San Bernadino</u>, 159 F.R.D. 531, 534-35 (C.D. Cal. 1994).

Here, assuming she is authorized to assert an official information claim of privilege, Defendant Armstrong has not met her burden of identifying the allegedly privileged information in her personnel file and the specific interests that would be threatened

by disclosure under a protective order.  She failed to invoke the
privilege by name or explain how information concerning the reasons
she no longer works for CDCR would violate the federal qualified
privilege.  See Kelly, 114 F.R.D. at 672 (stating that generalized
claims of harm are insufficient to satisfy the objecting party's
burden); see Rackliffe, 2012 U.S. Dist. LEXIS 57973, at *10.
Armstrong also has not satisfied the other requirements for
invoking the privilege.

Because this Court is unable to conduct a meaningful balancing
analysis, it overrules the privilege objection and orders full
disclosure.  Kerr, at 669; see also Chism, 159 F.R.D. at 533
("Deputy Rick Roper's (Roper's) declaration in opposition to the
motion does not meet the threshold requirements of showing cause
why discovery should be denied under the official information
privilege.").  Bryant's Motion to Compel a response to
interrogatory 1 is **GRANTED**.

**2.  Interrogatory 2**

Plaintiff asks Defendant in interrogatory 2, "State any and
all reasons why you were arrested."  (Mot. Order Compel Disc.
Armstrong Attach. #2 Decl. Bryant 4, ECF No. 56.)  Again, Armstrong
objected on relevance, foundation, evidentiary, privacy, privilege,
and confidential grounds.  (Id. at 13.)  In her Opposition,
however, Defendant only pursues the objections based on relevance,
privilege and confidentiality, and vagueness.

**a.  Relevance**

The Plaintiff maintains interrogatory 2 seeks relevant
information because he believes Defendant was arrested for
committing criminal acts in connection with the "Southern

California Hispanic Street gang(s)" and was fired from CDCR as a result. (Mot. Order Compel Disc. Armstrong Attach. #1 Br. 3, ECF No. 56.) Bryant argues the question could lead to information demonstrating Armstrong's tendency to show preference toward the "Surenos/Hispanic" gang members from Southern California, who are "violently opposed" to African-Americans. (Pl.'s Reply Armstrong's Opp'n 4, ECF No. 70.) The information could also establish Defendant's intent to discriminate against Bryant and other African-Americans prisoners. (Id. at 4-5.) In response, Armstrong argues in a conclusory manner that the reasons she was arrested are irrelevant. (Def. T. Armstrong's Opp'n 3, ECF No. 59.)

Interrogatory 2 seeks information that is relevant to Bryant's accusation that Armstrong intentionally discriminated against him through law library scheduling or lead to the discovery of admissible evidence, even though the evidence may not ultimately be admissible at trial. See Fed. R. Civ. P. 26(b)(1). For example, if Armstrong's prior arrest involved her affiliation with a race-oriented gang, the information could bear on whether she intentionally discriminated against Bryant on the basis of race. See Oppenheimer Fund, Inc., 437 U.S. at 351; see also Hampton, 147 F.R.D. at 229 (discussing that personnel files and internal affairs histories may be relevant to issues of credibility or motive). Armstrong's relevance objection is overruled.

### b. Privileged and confidential

Defendant Armstrong objects to interrogatory 2 by stating, "Further, the interrogatory is also objectionable to the extent it seeks disclosure of any information that may be in Armstrong's personnel file." (Def. T. Armstrong's Opp'n 3, ECF No. 59.)

1   Armstrong is incorrect.  The interrogatory does not seek "any"

2   information in her personnel file.  As discussed, although federal

3   common law recognizes a qualified privilege for official

4   information, Defendant has not properly invoked the privilege.

5   Soto, 162 F.R.D. at 613; Kelly, 114 F.R.D. at 669.  This objection

6   is also overruled.

7            c.  **Vagueness**

8       Bryant asks Armstrong to state the "reasons" she was arrested.

9   (Mot. Order Compel Disc. Armstrong Attach. #2 Decl. Bryant 4, ECF

10  No. 56.)  The Defendant contends that the interrogatory is vague

11  because it calls her to speculate as to the "reasons" she was

12  arrested.  (Def. T. Armstrong's Opp'n 3, ECF No. 59.)

13      "The party objecting to discovery as vague or ambiguous has

14  the burden to show such vagueness or ambiguity." Swackhammer v.

15  Sprint Corp., 225 F.R.D. 658, 662 (D. Kan. 2004) (footnote

16  omitted).  The responding party should exercise common sense and

17  attribute ordinary definitions to terms in discovery requests.  Id.

18  (footnote omitted).  A common sense definition of "reasons" would

19  entail the legal bases for Defendant's arrest.  See id.  Bryant's

20  interrogatory is not vague, and the Motion to Compel a further

21  response to interrogatory 2 is **GRANTED**.

22       3.  **Interrogatory 3**

23      In interrogatory 3, Plaintiff asks Armstrong, "State where

24  inmate Teklezi H. Gebrezgiaber is presently housed

25  (I[n]stitution/Prison)."  (Mot. Order Compel Disc. Armstrong

26  Attach. #2 Decl. Bryant 4, ECF No. 56.)  The Defendant objected to

27  this interrogatory because it is not relevant, lacks foundation,

28  and should be excluded under Federal Rule of Evidence 403.  (Id. at

1    13.)  She also stated that without waiving these objections, "I do

2    not know."  (Id.)

3         Armstrong submits in her Opposition that the dispute regarding

4    interrogatory 3 is moot because defense counsel has since informed

5    Bryant where inmate Gebrezgiabar is housed.  (Def. T. Armstrong's

6    Opp'n 3, ECF No. 59.)  Bryant does not indicate otherwise in his

7    Reply.  (See Pl.'s Reply Armstrong's Opp'n 4-6, ECF No. 70

8    (addressing interrogatories 1 and 2).)  In any event, Armstrong

9    answered the interrogatory.  Plaintiff's Motion to Compel a further

10   response to interrogatory 3 is **DENIED** as moot.

11        **4.   Request for production of documents 1**

12        In document request 1, Bryant seeks all documents and writings

13   that disclose the "contents of any and all procedures, policies, or

14   directives" revealing "the scheduling of inmates housed in

15   Calipatria State Prison's Administrative Segregation-Building 5 for

16   law library access" that were in effect during Armstrong's tenure

17   as "A5 Building Legal Officer."  (Mot. Order Compel Disc. Armstrong

18   Attach. #2 Decl. Bryant 8, ECF No. 56.)  Armstrong objected because

19   she lacks possession, custody, or control of the documents, as she

20   is "not employed by CDCR, and has no access to any of the requested

21   documents."  (Id. at 19.)

22        **a.   Possession, custody, or control**

23        Bryant challenges Defendant's claim that she lacks access to

24   the documents because she is not presently employed by CDCR.  (Mot.

25   Order Compel Disc. Armstrong Attach. #1 Br. 5, ECF No. 56.)  The

26   deputy attorney general representing Armstrong, John Walters, has

27   access to the records because he represents all of the other

28   Defendants who are presently employed by CDCR.  (Id.; see Pl.'s

19

Reply Armstrong's Opp'n 6-7, ECF No. 70 (citing <u>Pulliam v. Lozano</u>, No. 1:07-cv-964-LJO-MJS(PC), 2011 U.S. Dist. LEXIS 12593, at *2 (E.D. Cal. Jan. 31, 2011)).) According to Bryant, the Defendants "have no problem obtaining documents from the CDCR for the purpose of preparing their defense." (Pl.'s Reply Armstrong's Opp'n 7, ECF No. 70.) Bryant urges that Armstrong is in control of documents showing scheduling policies because she is represented by the Attorney General's Office. (<u>Id.</u>) The Defendant counters by briefly stating that, as a former employee, she does not have control over company documents. (Def. T. Armstrong's Opp'n 4, ECF No. 59 (citing <u>7-Up Bottling Co. v. Archer Daniels Midland Co.</u>, 191 F.3d 1090, 1107 (9th Cir. 1999)).)

A party is deemed to have control over documents if he or she has a legal right to obtain them. <u>See</u> <u>Clark</u>, 181 F.R.D. at 472; <u>see also</u> 7 James Wm. Moore, et al., <u>Moore's Federal Practice</u>, § 34.14[2][b], at 34-73 to 34-75 (footnote omitted) ("The term 'control' is broadly construed."). A party responding to a document request "'cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control.'" <u>Meeks v. Parsons</u>, No. 1:03-cv-6700-LJO-GSA, 2009 U.S. Dist. LEXIS 90283, at *11-12 (E.D. Cal. Sept. 18, 2009) (citation omitted).

Some courts have assumed that a party has control of documents in the possession of another and ordered the party to produce relevant documents. <u>See</u> <u>Zackery v. Stockton Police Dep't</u>, No. CIV S-05-2315 MCE DAD P, 2007 U.S. Dist. LEXIS 44144, at *11-12 (E.D. Cal. June 7, 2007) ("directing" counsel for defendants to obtain

1   and produce records in the possession of their current employer,

2   the Stockton Police Department).  Yet, records in the possession of

3   a former employer are further removed from the control of a former

4   employee.   In <u>Lowe v. District of Columbia</u>, 250 F.R.D. 36, 38

5   (D.D.C. 2008), the district court stated that "[f]ormer employees

6   of government agencies do not have 'possession, custody, or

7   control' of documents held by their former employers."  The burden

8   of establishing control over the documents sought is on the party

9   seeking production.   <u>United States v. Int'l Union of Petroleum &</u>

10  <u>Indus. Workers</u>, 870 F.2d 1450, 1452 (9th Cir. 1989); <u>accord</u> 7 James

11  Wm. Moore et al., <u>Moore's Federal Practice</u>, § 34.14[2][b], at 34-

12  77.

13       Bryant attempts to establish that Armstrong has control over

14  Calipatria's law library scheduling policies by arguing that she

15  and the other Defendants are represented by the Attorney General's

16  Office, and the other Defendants are currently employed by CDCR.

17  Plaintiff's argument would be stronger if the document request was

18  directed at a Defendant who was currently employed by CDCR.  <u>See</u>

19  <u>Pulliam</u>, 2011 U.S. Dist. LEXIS 12593, at *2.  Yet, Bryant seeks the

20  records from Armstrong, a former CDCR employee.  The Plaintiff has

21  not shown that Defendant has control over records in the custody of

22  her former employer.  <u>Lopez v. Chertoff</u>, No. CV 07-1566-LEW, 2009

23  U.S. Dist. LEXIS 50419, at *5 (E.D. Cal. June 2, 2009) ("[A]s a

24  former employee of the Yolo County Public Defender's Office

25  [defendant] neither has possession, custody, or control of

26  documents held by his former employer, nor does he have the present

27  ability to legally demand such documents.")  Armstrong cannot be

28  compelled to produce documents from an agency that previously

1  employed her when the records are not in her custody, possession,

2  or control.  Plaintiff's Motion to Compel a further response to

3  document request 1 is **DENIED**.

4      **5.  Request for production of documents 2**

5      In document production request 2, Bryant seeks all documents

6  and writings that disclose the "contents of any and all questions,

7  answers or statements resulting from any and all inquiries made"

8  concerning the grievance submitted by inmate Teklezgi H.

9  Gebrezgiaber "CDCR# T43976" on January 28, 2008.  (Mot. Order

10 Compel Disc. Armstrong Attach. #2 Decl. Bryant 8-9, ECF No. 56.)

11 The Defendant objected on relevance, foundation, and evidentiary

12 grounds, and because the requests invade inmate Gebrezgiaber's

13 right to privacy.  (<u>Id.</u> at 19-20.)  Armstrong further responded by

14 stating that she lacked possession, custody, or control over the

15 requested documents because she is not employed by CDCR and lacks

16 access to any of the material.  (<u>Id.</u>)

17          **a.  Possession, custody, or control**

18     Again, Plaintiff challenges Armstrong's contention that she is

19 unable to access inquiries into inmate Gebrezgiaber's grievance

20 because she is no longer employed at CDCR.  (<u>Id.</u> Attach. #1 Br. 5.)

21 As discussed above, however, the document request is directed at

22 Defendant Armstrong — a former CDCR employee.  She cannot be

23 compelled to produce responsive records from agencies that

24 previously employed and are not in her custody or possession.  <u>See</u>

25 <u>Lowe</u>, 250 F.R.D. at 38; <u>see also</u> <u>Lopez</u>, 2009 U.S. Dist. LEXIS

26 50419, at *5.  Defendant's objection is sustained, and the Motion

27 to Compel a response to document production request 2 is also

28 **DENIED**.

**6.   Request for production of documents 3**

Finally, in document request 3, Plaintiff asks for all documents and writings that reveal the "CDCR-Institution/Prison" in which inmate Teklezgi H. Gebrezgiaber (T43976) is currently housed. (Mot. Order Compel Disc. Armstrong Attach. #2 Decl. Bryant 9, ECF No. 56.)  Armstrong objected on relevance, foundation, evidentiary, and privacy grounds.  (Id. at 19-20.)  Defendant also asserted she lacks possession or control over the records.  (Id.)

In her Opposition, Armstrong maintains that this issue is moot because defense counsel has since provided Plaintiff with inmate Gebrezgiabar's current location.  (Def. T. Armstrong's Opp'n 5, ECF No. 59.)  In his Reply, Plaintiff does not contest Defendant's assertion that the dispute is moot.  (See Pl.'s Reply Armstrong's Opp'n 6-7, ECF No. 70 (addressing document requests 1 and 2).) Therefore, Plaintiff's request for an order compelling a further response to document request 3 is **DENIED** as moot.

**C.   Defendant Janda:  Motion to Compel Responses to Document Requests 12 and 13 (Set One) ("Amended") [ECF No. 66]**

Next, Plaintiff filed a "Motion to Compel Discovery" seeking further responses from Defendant Janda to document requests 12 and 13 in set one ("amended") [ECF No. 66].  Defendant G. Janda's Opposition to Plaintiff's Motion to Compel Discovery, along with a declaration of John P. Walters, was filed in response [ECF No. 76]. Plaintiff then filed a "Notice of Defendant's Failure to Disclose Discovery" [ECF No. 78].

**1.   Request for production of documents 12**

In document request 12, Bryant asks Associate Warden Janda to produce all "Calipatria State Prison's ASU #2 group yard tapes"

1  from February to July 2008.  (Mot. Compel Disc. Janda 13, ECF No.
2  66.)   The Defendant objected to the request on foundation,
3  relevance, and evidentiary grounds.  (<u>Id.</u> at 20.)

4      Bryant asserts that he put Janda on notice of his request for
5  these yard tapes when he filed a grievance asking Janda to
6  investigate Plaintiff's complaints, which would include reviewing
7  the Administrative Segregation Unit ("ASU") group yard videotapes.
8  (<u>Id.</u> at 4.)   In the grievance, Bryant asked that the tapes be
9  preserved.  (<u>Id.</u>)  Plaintiff also notified Defendant of his need
10 for the tapes on May 28 and June 5, 2008, when Bryant stated in his
11 grievance, Log No. Cal-A-08-01027, that he sought "Group yard
12 videos and yard assignment records," and that he intended to
13 initiate civil litigation and would need the yard videotapes as
14 evidence.  (<u>Id.</u> at 4-5.)  Plaintiff suspects that Janda likely has
15 the videotapes but did not produce them because they were not in
16 his favor; to now say the tapes do not exist is an attempt to
17 withhold discovery.  (<u>Id.</u> at 5.)  Moreover, Bryant contends that
18 defense counsel conceded in response to Plaintiff's meet-and-confer
19 letter that the yard tapes are "generally not maintained," yet he
20 did not state that the tapes do not exist.  (<u>Id.</u> at 4.)  The
21 discovery is relevant, according to Bryant, because it will show
22 that "Group yard No. 2" consisted of African-American inmates only,
23 and the tapes will show the disparity of prisoners in ASU two, yard
24 two, compared to the number of inmates in other yards.  (<u>Id.</u> at 6.)
25     The Defendant counters that Plaintiff has not established that
26 daily videotapes of the exercise yards over a six-month period are
27 relevant to his claims.  (Def. G. Janda's Opp'n 2, ECF No. 76.)  In
28 response to Plaintiff's meet-and-confer letter, Janda reiterated

1  his relevance objections.  (<u>Id.</u>)  Defense counsel did, however,

2  also explain that there were no videos because they are only

3  maintained in response to specific instances that occur on a given

4  day.  (<u>Id.</u>)  Janda asserts that Bryant's request that the tapes be

5  preserved, which was made in pre-litigation grievances, does not

6  bear on the current discovery requests.  (<u>Id.</u>)  To clarify any

7  misunderstanding, Defendant served Plaintiff a supplemental

8  response to document request 12 stating that there are, in fact, no

9  responsive videos.  (<u>Id.</u> at 2-3.)

10          **a.   Relevance**

11      In the Second Amended Complaint, Bryant asserts that there are

12  two yards in "Ad-Seg #2," or ASU two — yard one and yard two.

13  (Second Am. Compl. 13-14, ECF No. 39.)  Yard one consisted of only

14  Hispanic prisoners and yard two was comprised of only African-

15  American inmates.  (<u>Id.</u> at 14.)  The Plaintiff also alleges that

16  Defendant Lizarraga initiated a "campaign" of racially-motivated

17  cell moves targeting African-American prisoners who were assigned

18  to yard two in ASU two.  (<u>Id.</u> at 26.)  Lizarraga moved these

19  inmates in retaliation to more restrictive cells located in ASU

20  one.  (<u>Id.</u>)  As a result, the number of inmates in yard two, of ASU

21  two, was reduced to three inmates, but similarly situated prisoners

22  in other yards in ASU two were not moved and the numbers of inmates

23  in those yards did not decrease.  (<u>Id.</u>)  Bryant was eventually

24  moved by Defendant Lizarraga on July 7, 2008.  (<u>Id.</u>)

25      Document production request 12 seeks videotapes for the "ASU

26  #2 group yard" from February to July 2008.  The footage, if it

27  exists, could provide information regarding the races of different

28  inmates, as well as the number of inmates, who attended yard

25

recreation at various times during the six-month period.  It is
unclear whether the "group yard" refers to yards one and two.  If
it does, the information could indicate whether yard two in ASU two
was comprised of only African-American inmates and whether yard one
was comprised of Hispanic inmates, as Plaintiff alleges.  The
footage could also reveal the decreasing number of inmates assigned
to yard two as a result of Lizarraga's retaliatory cell moves,
compared to the number of prisoners assigned to other yards in ASU
two.  To that extent, document request 12 seeks information that is
relevant to Bryant's claim that Lizarraga retaliated against him by
moving Plaintiff and the other yard two African-American inmates to
more restrictive cell placements.  Janda's relevance objection is
overruled.

### b.   Possession, custody, or control

In his Motion, Plaintiff submits that although Associate
Warden Janda initially objected to document request 12 because it
does not seek relevant information, defense counsel John Walters
later suggested in a letter to Bryant that Janda does not possess
the videotapes.  (Mot. Compel Disc. Janda 4-5, 33, ECF No. 66.)  In
the letter, Walters states, "Defendant stands by these objections.
Further, as noted above, video tapes are generally not maintained
unless a specific event or incident happens on that date, in which
case they are maintained as evidence."  (Id. at 33.)

When a party responds to a document request with an answer as
opposed to production or an objection, the party must answer under
oath.  7 James Wm. Moore, et al., Moore's Federal Practice, §
34.13[2][a], at 34-57 (footnote omitted); see id. § 34.14[2][a], at
34-73 (footnote omitted).  If Defendant Janda's response is that

08cv02318 W(RBB)

there is no relevant material in Defendant's control, he must state so under oath.  See Vazquez-Fernandez v. Cambridge Coll., Inc., 269 F.R.D. 150, 155 (D. P.R. 2010).  Nevertheless, because Janda has not supplied an answer under oath, Plaintiff's Motion to Compel [ECF No. 66] a further response from Defendant Janda to document request 12 in set one ("amended") is **GRANTED**.

   **2.   Request for production of documents 13**

   Request 13 asks Defendant to produce all "Calipatria State Prison's ASU #2 group yard 'Assignment Records,' setting forth the number of inmates assigned to each yard" from February to July 2008.  (Mot. Compel Disc. Janda 13, ECF No. 66.)  Janda responded, "A diligent search is being undertaken for the requested items. Defendant will produce any documents within his possession, custody, or control to the extent any exist."  (Id. at 20.)

   Plaintiff asked Defendant for a specific date by which he would provide the responsive documents.  (Id. at 4.)  In response, Janda indicated that he would only provide Bryant with an "update" on the progress by a date certain, which was just two days before any motion to compel would have to be filed.  (Id.)  In Janda's Opposition, defense counsel submits that he has been attempting to locate the responsive documents and anticipates serving Bryant a supplemental response in approximately one week.  (Def. G. Janda's Opp'n 3, ECF No. 76.)  Janda argues that the Motion to Compel a response to document request 13 should therefore be denied as moot. (Id.)

   Bryant subsequently filed a "Notice of Defendant's Failure to Disclose Discovery," in which he states that he received the supplemental response counsel referred to in the Opposition, but

1  the production is insufficient.  (Notice Def. Janda's Failure

2  Disclose 2, ECF No. 78.)  Specifically, Plaintiff contends that

3  Janda merely produced copies of handwritten notes by prison staff

4  that do not disclose the number of inmates assigned to the yards;

5  the notes only reveal the number of inmates who actually attended

6  the yard on certain days.  (<u>Id.</u>)

7       Document request 13 explicitly sought documents reflecting the

8  yard "'Assignment Records,' setting forth the number of inmates

9  <u>assigned to</u> each yard" from February to July 2008.  (Mot. Compel

10  Disc. Janda 13, ECF No. 66) (emphasis added).  Janda did not object

11  to the document request initially or in opposition to the Motion to

12  Compel and has therefore waived any objection.  <u>See</u> S.D. Cal. Civ.

13  R. 7.1(f)(3)(c).  Moreover, the yard assignment records are clearly

14  relevant to Bryant's retaliation claim.  Accordingly, the Defendant

15  still has not disclosed documents showing the number of prisoners

16  assigned to each yard during this time period; his supplemental

17  production is not fully responsive and further production is

18  warranted.  Defendant Janda is to provide Bryant with all ASU group

19  two yard assignment records showing the number of inmates assigned

20  to each yard that are in Janda's possession, custody, or control.

21  If there are no other responsive documents, the Defendant must,

22  nevertheless, provide the answer under oath.  <u>See</u> <u>Vazquez-</u>

23  <u>Fernandez</u>, 269 F.R.D. at 155.  Plaintiff's Motion to Compel a

24  further response to document request number 13 is **GRANTED**.

25  **D.   Defendant Lizarraga:  Motion to Compel Responses to**
    **Interrogatories 11 and 12 (Set One) [ECF No. 71]**
26

27       In "Plaintiff's Motion to Compel Discovery," Bryant seeks an

28  order compelling Defendant Lizarraga to respond to interrogatories

11 and 12 in set one [ECF No. 71].  Lizarraga filed an Opposition,
along with a declaration of John P. Walters [ECF No. 77].  No reply
was filed.

### 1.   Interrogatories 11 and 12

Bryant asks Lizarraga in interrogatory 11 to state the races
of the inmates assigned to "Calipatria State Prison - ASU #2's
group yard No. 1" from January to July 2008.  (Mot. Compel Disc.
Lizarraga 13, ECF No. 71.)  In interrogatory 12, Plaintiff asks
Lizarraga to state the races of the prisoners assigned to
"Calipatria State Prison - ASU #2's group yard No. 2" from January
to July 2008.  (Id.)  Although Lizarraga responded separately to
each interrogatory, his answers were identical:

> I do not know, and I do not have possession,
> custody, or control over the documents that may assist in
> answering this interrogatory.  First, inmates are not
> assigned to yard groups based on race.  They are assigned
> based on affiliations.  Second, in order to determine the
> race of each inmate in the yard group on each day within
> that seven-month period, the Yard Log Books must be
> checked for each day for a list of assigned inmates.  The
> names and CDC numbers of each inmate would then have to
> be recorded, and used to check the individual Central
> file of each inmate to determine their race.  Central
> files are maintained [sic] the prison that inmate is
> currently housed at.

(Id. at 20.)

Bryant now seeks an order compelling Lizarraga to supplement
these answers.  Plaintiff complains that Defendant did not state
that he would, at a minimum, conduct a diligent search to locate
information that could help him answer the questions.  (Id. at 4.)
According to Bryant, Lizarraga's claimed lack of knowledge of these
inmates' races is disingenuous because he has worked in ASU two for
several years.  (Id. at 5.)  Further, Bryant is only seeking the

1   races of the inmates within the specific time frame, not how those
2   inmates were assigned to the yard group.  (_Id._)

3        The Plaintiff also challenges Lizarraga's asserted inability
4   to obtain responsive information.  (_Id._)  Bryant argues that he
5   independently obtained several "Calipatria State Prison-
6   Administrative Segregation Daily Yard Activity" forms from a
7   correctional officer working in ASU two who simply walked over to
8   the computer in the staff's office and downloaded the forms for
9   Plaintiff.  (_Id._)  One form indicates that the yard has "Controlled
10  Compatible-Black, Northern Hispanic, and Other" inmates and that
11  "Yard Group No. 2" is comprised of all African-American prisoners.
12  (_Id._)  In any event, Plaintiff insists that Lizarraga can
13  reasonably obtain the information because he has access to a
14  computer inside of ASU two, and a counselor is present during the
15  week who can download documents relating to inmate housing.  (_Id._
16  at 6.)

17       Defendant Lizarraga counters that his responses to
18  interrogatories 11 and 12 are sufficient.  (Def. R. Lizarraga's
19  Opp'n 2, ECF No. 77.)  To determine the inmates' races, Defendant
20  asserts he can not answer the questions by reviewing documents
21  because he would have to review a list of the inmates assigned for
22  each day during that time period, record their names and CDCR
23  numbers, and then "cross-check" them with the central files, which
24  are maintained by the prison where each inmate is currently housed.
25  (_Id._)  "In short, there were no readily available sources for
26  Lizarraga to check for the answers to the interrogatories, and
27  Lizarraga could not travel up-and-down the state pulling Central
28  files and investigating Plaintiff's discovery."  (_Id._ (citing

<u>Heilman v. Vojkufka</u>, No. CIV S-08-2788 KJM EFB, 2011 U.S. Dist.
LEXIS 26004, at *36 (E.D. Cal. Feb. 17, 2011)).)  Lizarraga submits
that his response of "I don't know" is therefore sufficient.  (<u>Id.</u>)

   Defendant responds to Bryant's claim that there is an
available source for Lizarraga to obtain responsive information by
conceding that the "Daily Yard Activity" form that Plaintiff
obtained does, in fact, exist.  (<u>Id.</u> at 3.)  Yet, this form is not
available for the seven-month period in 2008 at issue; defense
counsel alleges that he visited Calipatria and specifically looked
for any available daily yard activity forms from 2008 but was
unable to located any.  (<u>Id.</u>; <u>see</u> <u>id.</u> Attach. #1 Decl. Walters 2.)
Walters states that he was later informed that staff in the
litigation coordinator's office did not have the forms and noted
that they were "likely purged."  (<u>Id.</u> Attach. #1 Decl. Walters 2.)

   Defense counsel states that the only similar items available
for that period was the "A5 Yard Gun Log Book" and the
"Administrative Segregation Isolation Log Book," which are hard
cover journals.  (<u>Id.</u> at 3.)  The yard gun log book for the
relevant 2008 period shows the number of prisoners assigned to each
yard, and the isolation log book details each inmate's name, CDCR
number, and cell assignment, but not his race.  (<u>Id.</u>)  Despite
these representations, Lizarraga urges that there is "no available
document" for him to review to answer interrogatories 11 and 12.
(Def. R. Lizarraga's Opp'n 3, ECF No. 77.)

   "A party answering interrogatories has an affirmative duty to
furnish any and all information available to the party."  7 James
Wm. Moore, et al., <u>Moore's Federal Practice</u>, § 33.102[1], at 33-72
(footnote omitted).  Interrogatories must be answered "separately

and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).  If a
responding party is unable to provide the requested information, he
may not simply refuse to answer.  Haworth v. Suryakant, No.
1:06-cv-1373-LJO-NEW(TAG), 2007 U.S. Dist. LEXIS 48380, at *5 (E.D.
Cal. June 25, 2007) (quoting Hansel v. Shell Oil Corp., 169 F.R.D.
303, 305 (E.D. Pa. 1996)).  The responding party must state under
oath that he is unable to provide the information and must describe
the efforts he used to obtain the information.  Id. (quoting
Hansel, 169 F.R.D. at 305); see also 7 James Wm. Moore, et al.,
Moore's Federal Practice, § 33.102[3], at 33-75 (footnote omitted).

     Here, although Lizarraga has verified his responses to
interrogatories 11 and 12 under oath, he has not explained why he
is unable to provide the information or described the efforts he
made to obtain the information, as required.  The subsequent
statements regarding the availability of the information are
unverified and made by defense counsel in letters or in opposition
to this Motion to Compel.  This is not in compliance with Rule 33
of the Federal Rules of Civil Procedure.  Moreover, although
Lizarraga's attorney has described the available means to ascertain
the names, CDCR numbers, and cell assignments of the inmates housed
in each yard for the seven-month period, Defendant has
insufficiently asserted an inability to ascertain the races of
these prisoners.

     If Lizarraga is unable to determine the prisoners' races, he
must state so under oath and describe the steps taken to answer
interrogatories 11 and 12.  See Frontier-Kemper Constructors, Inc.
v. Elk Run Coal Co., 246 F.R.D. 522, 529 (S.D. W. Va. 2007)
(finding that a responding party has a "severe duty" to make every

effort to obtain the requested information and, if unsuccessful, must provide an answer detailing the attempts made to ascertain the information).  Bryant is entitled to supplemental, verified responses.  Plaintiff's Motion to Compel responses to interrogatories 11 and 12 in set one from Defendant Lizarraga [ECF No. 71] is **GRANTED**.

**E.    Defendants Armstrong and Ochoa:  Motion to Compel Responses to Interrogatories 2 and 7 (Set Two) and Document Request 3 (Set Two) [ECF No. 74]**

The Plaintiff next filed a "Motion for an Order to Compel Discovery" in which he seeks to compel responses from Defendant Armstrong to interrogatory 2 and document request 3 in set two; Bryant also seeks to compel a response from Defendant Ochoa to interrogatory 7 in set two [ECF No. 74].  Defendants' Opposition to Plaintiff's Motion to Compel Discovery was filed in response, along with a declaration of John P. Walters [ECF No. 83].  Bryant did not file a reply.

**1.    Armstrong**

In interrogatory 2, of set two, Plaintiff asks Armstrong to state the dates and times that Armstrong attended training classes from December 2007 to February 2008.  (Mot. Compel Disc. Armstrong & Ochoa 11, ECF No. 74.)  Defendant Armstrong objected on relevance and evidentiary grounds.  (<u>Id.</u> at 21.)  She also objected that the interrogatory invades her right to privacy and seeks information that is privileged and confidential.  (<u>Id.</u> (citing Cal. Pen. Code §§ 832.7, 832.8).)

In document production request 3 in set two, Bryant asks Armstrong to produce all "job description, roster or other document(s)" disclosing the dates and times that she attended

08cv02318 W(RBB)

training classes at Calipatria from December 2007 to February 2008. (Id. at 16-17.)  Armstrong objected because the request invades her right to privacy and improperly seeks her personnel file, which is privileged and confidential.  (Id. at 31 (citing Cal. Pen. Code §§ 832.7, 832.8).)

Bryant maintains that the information sought in interrogatory 2 and document request 3 is relevant because Armstrong makes several assertions about incidents that Plaintiff insists could not have occurred because Armstrong was at a training class on the date and time she asserts Bryant committed the act.  (Id. at 6.)  Also, the information is relevant because it bears on Defendant's credibility.  (Id.)  Defendant Armstrong argues in her Opposition that the dispute over interrogatory 2 and document request 3 is moot because after Bryant filed this Motion, defense counsel provided Plaintiff with documents showing the dates and times Defendant Armstrong and other Defendants attended training from December 2007 to July 2008.  (Defs. Armstrong & Ochoa's Opp'n 2, ECF No. 83.)  The class record produced to Bryant reveals every training class that Armstrong attended from 2006 to September 10, 2009, including the date, length, and title of each class.  (Id. Attach. #1 Decl. Walters 3.)

The Plaintiff is apparently satisfied with Defendant's production and has not filed anything contesting counsel's representation that the information provided is responsive to the discovery requests.  Consequently, Plaintiff's Motion to Compel responses from Defendant Armstrong to interrogatory 2 and document request 3 in set two [ECF No. 74] is **DENIED** as moot.

//

**2.   Ochoa**

In interrogatory 7, Bryant asks Defendant Ochoa to state the reasons the memorandum signed by "former CDCR Secretary Roderick Hickman," dated February 17, 2004, and titled, "'Zero Tolerance Regarding The Code Of Silence,'" was distributed to CDCR employees. (Mot. Compel Disc. Armstrong & Ochoa 43, ECF No. 74.)  Ochoa objected on foundation, speculation, relevance, and evidentiary grounds.  (Id. at 29.)  Without waiving the objections, Ochoa answered, "I do not know.  I was not involved in authoring or distributing the memo."  (Id.)

In the Motion to Compel, Plaintiff contends that Ochoa's response is evasive and incomplete because Defendant has resources available to him to assist him in answering the interrogatory. (Id. at 7.)  Moreover, a simple reading of the memorandum could enable Ochoa to answer completely.  (Id.)  In his Opposition, Defendant maintains that Plaintiff is essentially asking Ochoa to explain why a memorandum that he did not write or distribute was sent to prison staff.  (Defs. Armstrong & Ochoa's Opp'n 3, ECF No. 83.)  Ochoa urges that he also does not have a duty to research the reasons that someone else at CDCR wrote or distributed a memorandum in 2004.  (Id.)  Therefore, Defendant's answer, "I do not know," was sufficient.  (Id.)

As discussed previously, Ochoa has an affirmative duty to provide Bryant with all responsive information reasonably available to him.  7 James Wm. Moore, et al., Moore's Federal Practice, § 33.102[1], at 33-72 (footnote omitted).  He does not, however, have a duty to search for new information.  Id.  If Ochoa is unable to answer interrogatory 7 by stating the reasons that the memorandum

1  was distributed to Calipatria staff, he must provide that answer

2  under oath and must set forth the efforts he made to attempt obtain

3  the answer.  See Haworth, 2007 U.S. Dis. LEXIS 48380, at *5

4  (quoting Hansel, 169 F.R.D. at 305); see also Frontier-Kemper

5  Constructors, Inc., 246 F.R.D. at 529.  Here, Defendant verified

6  his response, "I do not know," but he did not specify the steps he

7  took to attempt to ascertain the reason for the distribution.

8  (Mot. Compel Disc. Armstrong & Ochoa 50, ECF No. 74.)

9      Plaintiff's Motion to Compel a further response from Defendant

10 Ochoa to interrogatory 7 in set two [ECF No. 74] is **GRANTED.**  Ochoa

11 is to utilize all reasonably available means to determine the

12 reasons the memorandum was distributed.  If after doing so,

13 Defendant still is unable to respond to the interrogatory, he must

14 state so under oath and must describe the attempts he made to

15 locate the information.

16 **F.   Defendant Ochoa:  Motion to Compel Responses to Document**
   **Requests 1, 2, and 3 (Set Three) [ECF No. 82]**

17

18     Bryant also filed a "Motion to Compel Discovery," in which he

19 seeks an order compelling Defendant Ochoa to respond to document

20 requests 1, 2, and 3 in set three [ECF No. 82].  Ochoa filed an

21 Opposition to Plaintiff's Motion to Compel in response [ECF No.

22 88].  No reply was filed.

23     **1.   Requests for production of documents 1, 2, and 3**

24     The three document requests are essentially the same.  In

25 document request 1 in set three, Plaintiff asks Ochoa to produce

26 any "policy, regulation, directive, or other document(s) which

27 would support" Defendant Ochoa's assertion made in his second level

28 response to Plaintiff's Log No. Cal-A-08-00207 appeal, in which

Ochoa found that Defendant Armstrong did not violate any CDC policy on May 21, 2008. (Mot. Compel Disc. Ochoa 10, Nov. 4, 2011, ECF No. 82.) Defendant provided the following answer in response to the document request:

> Defendant did not review any specific policy or regulation in conducting the Second Level Review. Defendant conducted the review based on the evidence and circumstances, and on Defendant's general familiarity with CDCR policy and knowledge that that [sic] staff should not racially discriminate against inmates. Therefore, there are no responsive documents.

(Id. at 15.) Ochoa did not object to the request on any ground and did not verify his response. (See id. at 15-17.)

Next, Bryant asks Ochoa in document request 2 to produce any "policy, regulation, directive, or other document(s) to support" Ochoa's claim made in his second level response to Plaintiff's Log No. Cal-A-08-00311 appeal, in which Ochoa found that Defendant Armstrong did not violate any CDC policy on May 21, 2008. (Id. at 10.) In response, Defendant provided the following answer:

> Defendant did not review any specific policy or regulation in conducting the Second Level Review. Defendant conducted the review based on the evidence and circumstances, and on Defendant's general familiarity with CDCR policy and knowledge that that [sic] staff should not racially discriminate, issue false chronos, or retaliate against inmates. Therefore, there are no responsive documents.

(Id. at 15.) The Defendant did not object to the request and did not verify his response. (See id. at 15-17.)

Finally, in document request 3, Plaintiff asks Ochoa to produce any "policy, regulation, directive, or other document(s) which support" Ochoa's claim made in his "'Second Level Response'" to Plaintiff's Log No. Cal-A-08-01027 appeal, in which Ochoa found that Defendant Armstrong did not violate any CDC policy on

September 4, 2008.  (<u>Id.</u> at 10-11.)  Ochoa answered:

> Defendant did not review any specific policy or regulation in conducting the Second Level Review. Defendant conducted the review based on the evidence and circumstances, and on Defendant's general familiarity with CDCR policy and knowledge that that [sic] staff should not racially discriminate or retaliate against inmates.  Therefore, there are no responsive documents.

(<u>Id.</u> at 15.)  Again, Ochoa did not object.  (<u>See</u> <u>id.</u> at 15-17.)  He also did not verify his response.  (<u>See</u> <u>id.</u>)

Plaintiff argues that Defendant's responses are evasive and incomplete because Bryant simply asks Ochoa for the policies that would support his conclusion that Armstrong and Lizarraga did not violate CDCR policy.  (<u>Id.</u> at 4.)  Further, defense counsel indicated in a subsequent letter that "while it is generally policy that racial discrimination is prohibited, there is no written regulation or policy."  (<u>Id.</u> at 27.)  Yet, notably, Bryant argues that counsel did not also state that there is no policy or regulation prohibiting retaliation against inmates.  (<u>Id.</u> at 5.)

Ochoa contends that his responses are sufficient because they informed Bryant that Defendant did not review any particular policy or regulation when considering and denying Plaintiff's inmate appeals.  (Def. Ochoa's Opp'n 2, Nov. 28, 2011, ECF No. 88.)  The Defendant properly answered the document request by stating that there are no responsive documents and later informed Bryant that there are no relevant written policies.  (<u>Id.</u>)  Moreover, according to Ochoa, Plaintiff seeks to compel Defendant to identify policies to show whether other Defendants violated CDCR policies; to this extent, the requests improperly seek a legal conclusion and potentially attorney work product.  (<u>Id.</u>)

As discussed previously, when a response to a production of documents is an answer instead of production or an objection, the party must answer under oath.  7 James Wm. Moore, et al., *Moore's Federal Practice*, § 34.13[2][a], at 34-57 (footnote omitted); *see id.* § 34.14[2][a], at 34-73 (footnote omitted).  The document requests explicitly seek documents that would support Ochoa's decision on Bryant's second level appeal.  Thus, Defendant's unsworn answer to the document requests stating that he did not actually review any policy when making his determination is insufficient.  Defense counsel's subsequent statement to Plaintiff that there are no written policies or regulation prohibiting racial discrimination is also inadequate because it was not made by Ochoa under oath and does not address policies regarding retaliation.

Bryant's Motion to Compel Ochoa to provide supplemental responses to document requests 1, 2, and 3 in set three [ECF No. 82] is **GRANTED**.  Ochoa shall provide Bryant with a verified response to the three document requests that also includes the Defendant's attempts to locate responsive documents.

**G.   Defendant Janda:  Motion to Compel Responses to Document Requests 3, 4, and 5 (Set Three) [ECF No. 86]**

The Plaintiff filed a "Motion to Compel Discovery," in which he moves for an order compelling Defendant Janda to respond to document requests 3, 4, and 5 in set three [ECF No. 86].  Janda filed an Opposition to Plaintiff's Motion to Compel and a declaration of John P. Walters [ECF No. 89].  Bryant did not file a reply.

Document request 3 in set three asks Associate Warden Janda to produce all "grievances, complaints, or other documents received by

1    prison staff Defendant Ochoa or his agents" at Calipatria since

2    June 7, 2007, regarding the "mistreatment of inmates by Defendants

3    Lizarraga, Catlett, Armstrong, or Trujillo," as well as the

4    corresponding investigative files and documents created in

5    response.  (Mot. Compel Disc. Janda 12, Nov. 21, 2011, ECF No. 86.)

6    Defendant objected because the request is vague, overbroad, and

7    irrelevant.  (Id. at 17.)  Janda indicated that he would, however,

8    respond if Bryant narrowed the request to claims related to the

9    ones in this lawsuit.  (Id.)

10        In document request 4 in set three, Bryant asks Defendant to

11   provide him with all inmate "grievances, complaints, or other

12   documents" received by Janda or his agents at Calipatria regarding

13   "allegations of racial discrimination or retaliation by staff on

14   inmates since June 7, 2007."  (Id. at 13.)  Defendant objected on

15   overbreadth and relevance grounds, but indicated he would provide a

16   supplemental response if Bryant narrowed the request.  (Id. at 18.)

17        In document request 5 in set three, the Plaintiff asks Janda

18   to disclose the following:

19           Any and all personnel files of Defendant Ochoa,
         Janda, Trujillo, Catlett, Lizarraga, and Armstrong that
20       relate to discipline and/or training of the individual
         defendants.  (Meaning training records, disciplinary
21       records which include, but are not limited to, employee
         performance appraisals or information related to
22       defendants' ethics, interpersonal relationships, decision
         making abilities, promotions, interviews with respect to
23       internal investigations and work and safety habits.)

24   (Id. at 13.)  Janda objected because the request seeks information

25   that is not relevant and invades his right to privacy.  (Id. at

26   18.)  Moreover, the request is vague and ambiguous.  (Id.)  Janda

27   did note, however, that he would supplement his response if Bryant

28   narrowed the request.  (Id.)

08cv02318 W(RBB)

1    In the Opposition, defense counsel submits that the dispute as
2  to all three document requests is moot, and Bryant's Motion should
3  therefore be denied.  (Def. Janda's Opp'n 2, Dec. 5, 2011, ECF No.
4  89.)  Plaintiff filed this Motion to Compel while the parties were
5  still engaged in the meet-and-confer process.  (Id.)  After filing
6  the Motion, Bryant agreed to narrow his requests to records
7  relating to the discipline or training of the individual
8  Defendants.  (Id. Attach. #1 Decl. Walters 2; see Mot. Compel Disc.
9  Janda 28, Nov. 21, 2011, ECF No. 86.)  In a subsequent letter,
10 Defendant's counsel responded by stating that Janda would provide
11 supplemental responses to the extent the requests for records were
12 limited to discipline of the Defendants for conduct similar to that
13 claimed in the case, retaliation and discrimination.  (Def. Janda's
14 Opp'n Attach. #1 Decl. Walters 2, Dec. 5, 2011, ECF No. 89.)
15 Counsel states that he then provided Bryant with some of the
16 supplemental responses and intended to provide him with the
17 remaining responses shortly; because Bryant never responded to
18 Walters's letter, counsel assumed there was an agreement as to the
19 limited scope.  (Id. at 2-3.)  Therefore, Janda explains that the
20 dispute is moot.

21    The Plaintiff has not filed a reply or any brief contesting
22 the statements made by defense counsel, and there is no indication
23 that Bryant considers the issue still in dispute.  The documents
24 attached to the Motion and the Opposition are consistent with
25 counsel's representations.  Consequently, Bryant's Motion to Compel
26 supplemental responses from Janda to document requests 3, 4, and 5
27 in set three [ECF No. 86] is **DENIED** as moot.
28 //

#### IV.   CONCLUSION

Plaintiff's Motions to Compel are **GRANTED** in part and **DENIED** in part for the reasons set forth above.

IT IS HEREBY ORDERED:

1.   Plaintiff's Motion to Compel further responses by Defendant Ochoa to document requests 1, 2, 3, and 4 in set one [ECF No. 53] is **GRANTED**.

2.   The Motion to Compel responses from Defendant Armstrong to interrogatories 1, 2, and 3 in set one and document requests 1, 2, and 3 in set two [ECF No. 56] is **GRANTED** in part and **DENIED** in part.  With respect to interrogatories 1 and 2, the Motion is **GRANTED**, but for interrogatory 3, the Motion is **DENIED** as moot.  For document requests 1 and 2, Bryant's request is **DENIED**, and for document request 3, Plaintiff's Motion is **DENIED** as moot.

3.   Bryant's Motion to Compel responses from Defendant Janda to document request 12 and 13 in set one ("amended") [ECF No. 66] is **GRANTED**.

4.   Plaintiff's request for an order compelling responses to interrogatories 11 and 12 in set one from Defendant Lizarraga [ECF No. 71] is **GRANTED**.

5.   The Motion to Compel responses from Defendant Armstrong to interrogatory 2 and document request 3 in set two and responses from Defendant Ochoa to document request 3 in set two [ECF No. 74] is **GRANTED** in part and **DENIED** in part.  The request for an order compelling responses from Armstrong to interrogatory 2 and document request 3 is

42

1    **DENIED** as moot; for interrogatory 7 to Ochoa, Bryant's

2    Motion is **GRANTED**.

3    6.   Plaintiff's request for an order compelling Ochoa to

4         provide supplemental responses to document requests 1, 2,

5         and 3 in set three [ECF No. 82] is **GRANTED**.

6    7.   Bryant's Motion to Compel supplemental responses from

7         Defendant Janda to document requests 3, 4, and 5 in set

8         three [ECF No. 86] is **DENIED** as moot.

9    The Defendants' discovery responses must be served no later

10   than June 29, 2012.

11

12   DATE:   June 14, 2012         _____

13                                         RUBEN B. BROOKS
                                   United States Magistrate Judge

14   cc:  Judge Whelan
          All Parties of Record

15

16

17

18

19

20

21

22

23

24

25

26

27

28